### CALVIN J. KEITH *v.* WILLIAM MACKEY.

Where, after the last day of grace, the drawer of a bill promises the holder to pay it, if he will not present it, and the latter subsequently presents and protests it, the former will be released from any obligation arising from his conditional promise.

After the last day of grace, the funds in the hands of the drawee are at the risk of the holder.

Though the drawer of a bill may be discharged from his obligation to pay it, by the neglect of the holder to have it presented at the place of payment, and protested, and to have notice given thereof, on the ground of the damage he is presumed to have sustained by the *laches* of the latter, yet, if he afterwards withdraws from the hands of the drawee the funds on which he had drawn, he will be responsible, under art. 2294 of the Civil Code, to the holder, who had become the owner thereof, for the amount.

APPEAL from the District Court of the First District, *Buchanan*, J.

*Preston*, for the plaintiff, cited Chitty on Bills, 1, 2, 424, 533–535. Bailey on Bills, 294, note 137 Ib. 304 and 496,

note 26.   3 Mart. N. S. 5.   9 La. 128.   13 La. 101.   12 Mart. 671.

*L. C. Duncan*, for the appellant.

MARTIN, J.   The defendant is appellant from a judgment against him, as drawer of a bill of exchange, not presented, nor protested in due time.   The record shows, that the parties met in New York, some time between the last day of grace and the day on which the bill was finally protested, when the defendant promised to the plaintiff, that if he would forbear to present the bill, he would pay it shortly ; notwithstanding which, the bill was afterwards presented, protested, and the present suit brought.   It is very clear, that the plaintiff, by protesting the bill, absolved the defendant from all obligation under the conditional promise he made.   But the plaintiff's counsel contends, that the obligation of the defendant results from his withdrawing from the hands of the drawees, the funds on which he had drawn.   On the expiration of the last day of grace, the funds in the hands of the drawee were at the risk of the plaintiff.   The acceptor of a bill, payable elsewhere than at his domicil, is discharged by the delay of the holder in presenting the bill at the place indicated for payment, if he prove that the delay has been injurious to him, by the failure of the banker who was named in the acceptance; as, in such case, the delay put the funds at the risk of the holder. Chitty on Bills, 424, 533, 534, 535.   " If the drawer withdraw his funds from the hands of the drawee, for the purpose of preventing payment by the drawee, neither presentment nor notice is necessary, in order to charge him."   Bailey on Bills, 294, note 137.   Ib. 304, and note.   See Ib. 496, and note 26.   In the edition from which this quotation is taken, the editor adds, in a note, that the consequence is the same, if the funds be withdrawn after the expiration of the days of grace.   Pardessus, in his Traité du Contrat de Change, vol. 1, p. 407, says, that the consequences of the bankruptcy or insolvency of the drawee, are at the risk of the negligent holder.   In Chitty on Bills, 481, it is said : " where a bill has been refused acceptance or payment, and the drawer has either stopped or withdrawn the effects from the hands of the drawee, though he may be, *prima facie*, discharged by the neglect to give him due notice, it seems, that in France

and America, the holder might recover from him the amount of such funds, but there is no decision to this effect in this country," (England.) The author speaks of two cases; one in which the funds have been stopped; the other, that in which they have been withdrawn. The funds have been stopped, when by the act of the drawer, they have been prevented from being paid to the holder, at the maturity of the bill; they are withdrawn, when afterwards, as in the case before the court, they are taken by the drawer. If Chitty spoke only of the case of funds taken away before maturity, he would not have said, " *it seems.*" He would have spoken positively; for the authorities, on this point, are numerous in France and America, and there are none to the contrary. Neither could he have said, that there was no decision to this effect in England. The reason that the drawer is discharged from his obligation to pay the bill, by the neglect of the holder to have it presented and protested, and to give notice, is, that he is always presumed to have sustained damage by the holder's *laches.* Chitty on Bills, 6th ed. 245. Proof that he has retaken his funds, is proof that he has sustained no loss. The presumption ceases on the administration of contrary proof. *Stabit presumptio donec contrarium probetur.*

If the funds, after maturity, are in the hands of the drawee, at the risk of the negligent holder, and he must bear the consequences of the bankruptcy or insolvency of the former, he must be the owner of such funds, for *res perit domino.* If this be the case, whoever takes them, without his authority, from the drawee, does him an injury, and we have a textual provision, that "every act whatever of man that causes damage to another, obliges him by whose fault it happened, to repair it." Civil Code, art. 2294. On the maturity of the bill the drawer may be discharged, by the neglect of the holder, of any obligation then existing, to pay it; but it cannot be thence concluded, that by his posterior torts he may not incur the obligation so to do. This obligation certainly results from his repossessing himself of the funds. It is just to say, that then the discharge, which resulted from the negligence of the holder, has ceased. It was grounded on the damage which he sustained, or was presumed to sustain, by the negligence of the holder. If the damage does not exist, there ought to be no

discharge ; *cessante causa, cessat effectus.* When the funds, destined to the payment of the bill, come, no matter how, into the hands of the drawer, he has sustained no loss, and no damages can be due him. Otherwise he would enrich himself at the expense of the holder. *Neminem oportet alterius damno locupletari.* It has been held by the Court of Cassation in France, that the drawer of a bill of exchange cannot oppose to the holder, his negligence to present and protest the bill, or to give notice in due time, when, since the protest, the drawee having failed, he has successfully claimed from the syndic part of the goods which he had sent to provide for the payment of the bill. Sirey, 3, 1, 268. In citing this decision, candor requires it to be stated, that there has long been in France a textual provision, in the ordinance of 1673, which has been copied into the Code of Commerce, (art. 171,) on which, probably, it is grounded. There is no *textual* provision, as far as we know, in England or America, that the drawer is discharged from the obligations on the bill, by the neglect of the holder. The decisions of courts which recognize this principle, cannot be extended to cases not similar to those in which they have been made. The neglect of the holder may discharge the drawer from his then existing obligations ; but it confers on him no right, nor any immunity from the consequences of his posterior act.

MORPHY, J. I concur in the foregoing opinion.

SIMON, J. I concur in opinion with Judge MARTIN, and adopt his conclusions.

GARLAND, J. dissenting. The petitioner alleges, that the defendant is indebted to him $370, with five per cent damages and interest, because the said defendant, in April, 1842, drew a bill of exchange on Barnard, Adams & Co., residing in Boston, payable one hundred days after date, to the order of said petitioner, which, when it became due, was not presented for acceptance, in consequence of an agreement made by said defendant, prior to its maturity, that said bill would afterwards be paid by him, or that he would authorize the drawees to pay it, they having, at the time the bill became due, and long afterwards, a sufficiency of funds belonging to the defendant to pay the same, which he had deposited there for said purpose, and which he, (petitioner,) considers

as belonging to him. The petitioner further represents, that some time after the maturity of the bill, it was presented for acceptance and payment, but the drawees refused to do either, because the defendant had, between the time of the maturity of said bill, and its presentation, received the balance of his account, whereupon it was protested for non-payment, and notice given accordingly. The plaintiff attached property of the defendant's, who is a non-resident, and prayed for a judgment.

The real facts of the case are : that on the 6th of April, 1842, the defendant drew a bill in favor of the plaintiff, at one hundred days after date, for $370, to be charged to account of pork and lard. The bill was not presented for acceptance, or payment, previous to maturity, nor on the day of its becoming due. About fifteen days after the day of payment, the plaintiff met the defendant in New York, when the former told the latter, that the bill had not been forwarded for acceptance ; whereupon the defendant said, that he had recently returned from Boston, and had drawn out of the hands of the drawees all the funds they had realized up to that time, on the produce they had in charge for him ; but if he, (plaintiff,) would hold up the bill, without presenting or protesting it, as it could not then be legally done, he, (defendant,) would pay it as soon as he could spare the funds ; but no unconditional promise was ever made to pay. It is not denied, that at and previous to the maturity of the bill, the defendant had funds in the hands of the drawees.

There was a judgment for the plaintiff, and the defendant has appealed.

Chitty, in his Treatise on Bills, 6th ed. p. 245, says : "it is settled, that the holder of a bill must present it to the drawee for payment at the time when due, when a time of payment is specified ; and when no time is expressed, within a reasonable period after receipt of the bill ; and if he neglect to do so, he shall not afterwards resort to the drawer or endorsers, whose implied contracts were only to pay in default of the drawee, and not immediate and absolute, and who are always presumed to have sustained damage by the holder's *laches*," which the law abhors. The doctrine is well established, that the holder of a bill must present it for acceptance before, or on the day of its maturity, or for pay-

ment on that day ; and if not accepted or paid, that notice must be given to the drawer to hold him responsible.    There are some circumstances which will excuse the presentation and notice of non-acceptance or non-payment, which the holder must establish, to make the drawer or endorser responsible.    This court, in 12 La. 386, says "where a bill of exchange is not presented for acceptance, nor for payment, until two days after the expiration of the last day of grace, the drawer is released, unless the holder shows that the drawee had no funds of the drawer in his hands.    The drawer of a bill is presumed to have funds in the hands of the drawee, and has a right to require that the payee should present it for payment on the last day of grace, and, on failure of payment, to have it protested, and legal notice given."    At page 402, of the same volume, the same principle is reiterated, and the court say, that the irregularities of the mail, which prevented the bill from arriving in season, will not excuse its non-presentation for payment, on the day it is due.    In that case, the bill was received and presented two days after maturity, yet the drawer was held not liable.    There are other cases which settle the jurisprudence of this, and all commercial countries, in relation to this question ; (9 Johns. Rep. 121.    12 Ibid. 423.    4 Mass. Rep. 341) ; but it is unnecessary to cite them all.    It is very certain, that if the drawer of a bill has no funds in the hands of the drawee, nor any reasonable expectation of having them at the time of maturity, he is liable, without presentation and notice ; but if he have funds, or if funds, or a consignment of goods, are on the way, and a reasonable expectation of their arrival in time, or if he has been in the habit of drawing bills on the drawee, although he have no funds, the drawer is discharged, unless a presentation at or before maturity, and a notice of dishonor is established.    3 Campbell, 217.    16 East, 43.

If the drawer of a bill withdraw his funds, previous to maturity, from the hands of the drawee, for the purpose of preventing payment by the drawee, neither presentment or notice is necessary to charge him.    3 Mason, 113.    2 Nott & M'Cord, 254.    Bailey, on Bills, 304.    So, if he forbids the drawee's paying it ; or if he intercepts funds which the acceptor expects to receive to pay it. But it cannot be now doubted, that if the drawer has funds in the

drawee's hands at the time of maturity, that he is discharged, if the bill is not presented at that time, and, if not paid, protested, and notice given.

In this case the defendant had ample funds in the hands of the drawees, at the maturity of the bill, and, it not having been presented for payment, he was discharged from all responsibility, and being so discharged, he had a right afterwards to settle his account, and withdraw all his funds from the hands of his correspondents. He was not bound to leave funds in the hands of the drawees, to pay a bill for which they were not responsible, not having accepted it, and from all liability for which he had been discharged by the negligence of the holder. If the defendant was bound to leave his funds in the hands of the drawee in such a case, it seems to me, there is very little necessity for presentment and notice. The legal discharge from all responsibility is of little value, if the money is to be left to pay the bill, whenever it may suit the holder to call for it. It is, in fact, saying, that a man must leave his money to pay that, which the law says he is not bound to pay.

The case put by the counsel for the plaintiff, of an acceptor not being discharged by the bill not having been presented on the day of maturity, is not, in my opinion, applicable to the one before us. The acceptor is absolutely bound ; he has funds ready ; no notice, or protest is required to bind him ; and yet we see that if he sustained any damage by the delay, for instance, by a bank failing, or by a depreciation in the funds provided to pay with, it is the holder's loss.

The counsel for the plaintiff, in his written argument, says, "that he does not rely on the defendant's subsequent promise to pay, as supposed, but on his liability, because he received the funds of the plaintiff here, for his own funds in Boston, and afterwards took those funds, which he had sold, and now keeps them. That which he had assigned for value received, he afterwards appropriates to his own use, and says he will pay nothing." This argument assumes, that, as the bill directs the amount to be charged to the account of pork and lard, it is an assignment of a portion of the proceeds of those articles in the hands of the drawees. It is, I believe, admitted by all, that a bill of exchange

is not an assignment of a portion of a fund in the hands of the drawee ; and this court, in 13 La. 101, says, " it is well settled, that where an order is drawn on a particular fund, for a part only, it does not amount to an assignment of that part, unless the drawee consents to the appropriation, by an acceptance of the draft." 5 Wheaton, 285, 6. If it were true, that the drawing of a bill of exchange constitutes an assignment of so much of the fund drawn on, as is expressed in the bill, all the provisions of the law in relation to presentation and notice would be idle ceremonies.

My opinion is, that the plaintiff, by failing to present the bill for acceptance or payment previous to, or at its maturity, and by not having shown any sufficient cause to excuse his negligence, has lost all right to recover on it ; and as his counsel admits, that he does not rely on the conditional promise to pay, I see no alternative but to give a judgment for the defendant.

*Judgment affirmed.*