THEOPHILUS FREEMAN, for the use of George W. Barnes, *v.* E. PROFILET.

Where the holder of a note, in consideration of a partial payment by the drawer, grants him an extension of time for the balance, without the consent of the accommodation endorser, the latter will be discharged. C. C. 3032.

APPEAL from the Parish Court of New Orleans, *Maurian,* J.

*T. Haynes,* for the appellant. The holder of a bill, after the liability of the parties is fixed by protest and notice, is not bound to active diligence, and he may forbear to sue as long as he pleases. Chitty on Bills, 441. 16 La. 218.

An agreement to give time to the acceptor or drawer, to have the effect of discharging the endorser, must be such an agreement as precludes the holder from suing and suspends his remedy against the drawer or acceptor, to the prejudice of endorser; and must be an agreement binding in law, and founded upon a sufficient consideration. Chitty on Bills, 441, [&c. 3 Kent's Com. 111—12. 12 Wheaton, 554. *Huie* v. *Bailey,* 16 La. 218.

The promise made by the plaintiff in this case, to wait with the drawer for the balance, if he would pay $2,000, or what he could of the debt, was not such a promise or agreement as was binding in law, not being founded on any new consideration, and was a *nudum pactum.* Chitty on Bills, 447. Bailey on Bills, 359—60, and notes. 16 La. 218. 1 Gal. 32. 1 Mason, 323. 3 Wash. C. C. R. 70. Also, the late case in this court of the *Bank of the United States* v. *Dick et al.*

*Benjamin* and *Micou,* for the defendant, cited the Civil Code, art. 3032. *Moore* v. *Broussard,* 8 Mart. N. S. 277. 15 Fenet, Recueil, p. 88.

SIMON, J. The plaintiff is appellant from a judgment discharging the defendant, who was sued as endorser of a draft drawn by P. M. Lapice on Peyroux, Arcueil & Co. to the order of the said defendant, and on account of which the drawer had paid $2,000 after the protest thereof, from his liability to pay the balance claimed against him.

The ground upon which the appellee was discharged, is, according to his answer, that the appellant had voluntarily aban-

doned his claim against the endorser by granting time and indulging the drawer, for a valuable consideration, without the knowledge and consent of the said endorser.

It appears from the evidence that the draft sued on, was drawn by P. M. Lapice on Peyroux, Arcueil & Co., to the order of the appellee, on the 5th of February, 1841, was made payable eight months after sight, and was accepted on the 9th of the same month; it was endorsed by the appellee, and not having been paid at maturity, was duly protested for non-payment.

The testimony of the drawer shows that, in the beginning of 1842, he paid to the appellant $2000, and that he told him, at the time of the payment, that he would have to wait with him till the next year for the balance of the note. To this the appellant agreed, and said he would wait. The witness further states' that, "he said to Freeman : I am not able to pay the whole amount, but if you will take $2,000 now, and wait till next year for the balance, I will pay that much; and he consented to this before I paid him the money. He said that he was willing to receive what I could pay, and give me time for the balance; and begged me, at the same time, to do all I could for him, which I promised to do." The witness further testifies that the time that appellant so agreed to wait, was until the crop of the next season was realized; but he thinks that, although he had several conversations with him on the subject, the precise amount of the payment to be made, and time to be given was not definitely arranged, until the interview at which the payment was made. In another part of his testimony, the witness explains the agreement thus : In a conversation with the appellant, at the time of the payment, and before the money was paid, he told him (Freeman) that he could pay him $2,000 on the claim; that he, witness, had done all he could to raise money; that he must divide what he had among his creditors, and that the amount of $2,000 was all he could pay then; and that he (Freeman) must wait another year for the balance, to which Freeman consented, but told witness to do all he could for him. This proposition to pay $2,000 and wait for the balance, came from the witness, and not from Freeman.

This testimony is corroborated by another witness, who testi-

fies that he was present when the $2,000 were paid to the plaintiff, and that, at the time of the payment, the latter promised to wait for the balance, but he does not recollect what length of time. He says further that the agreement to wait was made before the sum was paid, and it was so paid to Freeman immediately on the understanding being completed. He cannot say, however, that the payment was made on the condition that the time should be given.

· The deposition of another witness establishes that the plaintiff himself told him, about a year after the payment, that he had given time to the drawer for the balance, and that if he had not done so, he would probably have been paid. He further says, that he knows the situation of Lapice at the time of the payment; that, at that time, he does not think that a suit against him would have been available; and that Freeman told him (witness) in conversation, that he had granted time to Lapice on account of the payment of $2,000.

It is also shown that Lapice had his residence in Natchez, in 1840; that he did business there in 1841; had his plantation in Louisiana, and that the defendant's endorsement on the bill sued on was a mere accommodation endorsement, given to Lapice, the drawer of the same.

It seems evident from the facts shown that the plaintiff, on receiving a payment of $2000 from the drawer of the draft sued on, agreed and consented to give him further time to pay the balance. The prolongation of such time was to be extended until the crop of the next season was realized, that is to say, about one year longer; and this consent to wait one year was given without consulting the defendant. It cannot be doubted that the plaintiff was bound by his agreement, as his consent had been given in consequence of the payment; and that if he had sued Lapice before the expiration of the time allowed, the latter would have successfully opposed to him the exception, that the suit was premature. The payment of nearly one-half of the claim made by a man who appears at that time to have been greatly involved, who had his residence in another State, or at least transacted his business there, and against whom a suit would not have been available by a man who, perhaps, from the pro-

crastination of judicial proceedings from one State to another, would have been enabled to delay the final collection of the claim for a number of years, was, in our opinion, a sufficiently valuable consideration for the prolongation of time granted to him for the payment of the balance. The object of the plaintiff in giving the delay, was clearly to receive the $2000 offered by the drawer—to obtain his share of the money which the debtor had raised and intended to divide among his creditors; and as we may fairly suppose that he would not have granted him any further time to pay the debt, if he had not been informed that a payment of a large portion thereof was to be made if he would allow the delay, it results necessarily that such delay was given in consequence and in consideration of the partial payment, and that the plaintiff was bound to wait until its expiration. We have repeatedly held that if a creditor, by giving a further delay to pay a debt, enters into such an agreement as will disable him from suing the principal debtor, the surety will be discharged; and that the giving further time to the drawer of a note, without the assent of the other parties thereto, has the effect of discharging the latter from liability. Civil Code, art. 3032. 3 Mart. N. S. 598. 16 La. 133 and 218. 5 Rob. 277. In the case of *Moore* v. *Broussard*, 8 Mart. N. S. 278, this court said that, "the prolongation of the term, suspending the right of suing, enables the debtor to resist the claim of the creditor, who, by granting the indulgence, *deprives himself of the means of enabling the surety, by payment of the debt, to acquire the means of insisting on payment.*" See also 7 Mart. N. S. 13, in which it is recognized, that "there is no rule more clearly or firmly established in relation to negotiable paper, than that *giving time* to any of the parties *is a discharge of every other party*, who, on paying the bill or note, would be entitled to sue the party to whom such time has been given." See also the case of *McGuire* v. *Wooldridge and al.*, 6 Rob. 47, and that of *Gustine* v. *The Union Bank*, 10 Rob. 412, in which the same doctrine was again fully recognized and adhered to.

*Judgment affirmed.*