## SAMUEL GUSTINE *v.* THE UNION BANK OF LOUISIANA.

An accommodation endorser of a note will be discharged by any agreement between the holders and one of the drawers, amounting to a novation of the debt (C. C. 2194), or by which a prolongation of the term of payment is accorded to the latter. Ib. 3032.

A resolutory condition is implied in all synallagmatic contracts.

Where the legal effect of an agreement between the holder and one of the drawers of a note was to release an accommodation endorser, the rescission of the agreement may revive the original obligation of the drawer who was a party to it, but cannot revive that of the endorser, who was not a party thereto. C. C. 2038, 2040, 2041.

No reservation in a contract by which the holder of a note agrees to an extension of time in favor of the drawer, can prevent the discharge of an accommodation endorser, not a party to the contract. *Per Curiam:* The reservation is inconsistent with the very agreement containing it. While the agreement releases the principal debtor from a compliance with his original obligation, the reservation has for its object to insist upon its performance by the endorser.

A surety is bound for the same thing as his principal, and cannot be bound under more onerous conditions (C. C. 3006) ; and no reservation which a creditor can make in a contract containing a novation of the debt, or allowing an extension of time to the principal debtor, can preserve his rights against a surety not a party to the contract.

A judgment obtained against a surety does not change the character of his debt, nor his relation to the principal debtor ; and a prolongation of time granted to the latter will release the former, in the same manner as if no judgment had been obtained. The judgment creditor can do no act, whereby the rights or recourse of the surety against the debtor may be destroyed or impaired. If he make a novation, or grant time to the principal debtor, the surety is as effectually discharged, as if the judgment had been satisfied. C. C. 2194, 3022.

A judgment neither creates, adds to, nor detracts from the debt of the party against whom it is rendered. It only declares its existence, fixes its amount, and secures to the creditor the means of enforcing its payment. If the debt create a privilege or tacit mortgage, they exist independently of the judgment.

APPEAL from the District Court of the First District, *Buchanan, J.*

*R. N.* and *A. N. Ogden,* for the appellant. As to plaintiff's right of action to relieve his property from the mortgage existing on it, see *Flower* v. *Hagan,* 2 La. 223. The surety is discharged by any extension of time granted to the principal debtor, without his assent, nothwithstanding any reservation made by the creditors. 7 Toullier, No. 314. *Calliham* v. *Tanner,* 3 Rob. 299. *Louisiana Bank* v. *Dubreuil,* 5 Mart. 416. *Abat* v. *Holmes,* 3 La. 352. *Lobdell* v. *Nephler,* 4 La. 295. 9 Wheaton, 680. Civil Code, arts. 3030, 3032. *Bank of the United States* v. *Hatch,* 6 Peters, 250. 12 Wheaton, 554. *King* v. *Baldwin,* 2 Johnson's Ch. Rep. 554. 16 La. 218. Bayley on Bills, 234. An accommodation endorser is a mere surety. *Nolte* v. *His Creditors,* 7 Mart. N. S., 12. *Dorsey* v. *His Creditors,* 7 Ib. N. S. 499. *Louisiana State Bank* v. *Sénécal,* 10 La. 31. *Hereford* v. *Chase,* 1 Rob. 212. A novation of the debt discharges the surety on the original obligation. 7 Toullier, 328. Chitty on Bills, 292. 1 Mason's C. C. Rep. 323. *Morgan et al.* v. *Their Creditors,* 1 La. 527. Numerous English and American authorities, establish the discharge of an endorser under the circumstances of this case. See *English* v. *Darley,* 2 Bos. & Pul. 61. *Wood* v. *Jefferson Bank,* 9 Cowen, 195. Theobald on Principal and Surety, 129, 130, 144, 145. 3 Bos. & Pul. 363. *Whithall* v. *Masterman,* 2 Camp. N. P. C. 178. 18 Vesey, 20.

*H. R. Denis,* for the defendants.

MORPHY, J. This action was instituted to obtain the erazure of a mortgage resulting from a judgment rendered in favor of the Union Bank of Louisiana against the petitioner, as endorser of a note for $20,699 22, dated the 12th day of April, 1839, and payable to his order, twelve months after date, by Bullitt, Ship & Co. in liquidation, John Routh, Austin Williams, Joseph C. Ferriday, and Robert Ferriday, as joint and several drawers thereof. The petition alleges that, subsequently to the rendition of this judgment, to wit, on the 12th of May, 1841, the Union Bank entered into an arrangement with John Routh, one of the drawers *in solido,* whereby he acknowledged himself indebted to them, in the sum of $99,202 41, which indebtedness, it was stated in the notarial act passed between the parties, arose out of six several promissory notes, among which was the note on

which a judgment had been obtained against the petitioner; that Routh executed his bond, or obligation in favor of the bank for the aggregate amount of all these notes, and secured its payment by a mortgage on certain property and slaves, described in the act; and that it was stipulated that Routh should have the right to pay, and curtail his bond by yearly payments, each payment to be of one-eighth part of the whole amount of it, and interest on the remaining balance at the rate of seven per cent per annum, during the space of eight years from the date of the act of mortgage. The petitioner further avers that the bank, having incorporated the notes on which the plaintiff was endorser with other debts due to them, with which he had no connection, and having granted an extension of time by giving Routh eight years to pay the whole amount, have lost all recourse upon him (plaintiff), who was only a surety on the note he endorsed, because such extension of time was granted without his consent, and he has a right to demand a release of the judicial mortgage recorded against him. The defendants aver that the plaintiff cannot maintain the present action unless he first satisfies the judgment in their favor; that they have done no act which authorizes a release of said judgment; and that as soon as the plaintiff shall have paid the amount of it, the note endorsed by him will be delivered to him, and he will be subrogated, to the rights of the bank against the drawers thereof. Assuming the character of plaintiffs, in reconvention, the defendants pray for a judgment against Samuel Gustine, as the endorser of another protested note for $24,436 67, drawn to his order by Bullitt, Ship & Co., in liquidation, John Routh, Austin Williams, Joseph C. Ferriday, and Robert Ferriday, dated the 12th of April, 1839, and payable thirty-six months after date. To this reconventional demand, the plaintiff answered, by averring that the note upon which it was based, is one of the notes endorsed by him, which are described in the act of mortgage executed by Routh in favor of the bank, and for the payment of which they granted him an extension of time of eight years, thereby discharging the plaintiff's liability as an endorser thereon. There was a judgment of non-suit below in the principal suit, and upon the reconventional demand, the judge be-

ing of opinion that a clause in the mortgage, whereby Routh bound himself to procure, within the shortest possible delay, the renunciation of his wife of all her rights upon the property mortgaged, formed a suspensive condition of the agreement to give time, and that, until its performance, the rights of the parties to the contract, remained in abeyance. The plaintiff appealed.

From the act of mortgage executed on the 12th of May, 1841, it appears that the two notes above described, and a third one for $22,413 15, drawn by the same parties, and endorsed by the plaintiff, formed, with other notes, and a draft due to the bank by Routh, the sum of $93,508 51, to which was added, the further sum $5,693 90, for costs of protest and interest at the rate of seven per cent per annum, calculated on the notes due, up to the 10th of February, 1842. To secure the aggregate amount of principal and interest, Routh executed to the bank his bond, with a mortgage on a plantation in the parish of Concordia, and on seventy-five slaves, and was allowed a credit of eight years to pay the same, with the privilege of deferring the payment of the first instalment until the 10th day of February, 1843, by paying interest on the whole amount of the obligation at the rate of seven per cent per annum, for one year. The contract thus entered into between the bank and Routh, might well be considered as a novation of the former debt; but whether it be so considered, or whether it be viewed only as a prolongation of the term for payment, its legal effect on the obligation of the plaintiff, as an accommodation endorser, was the same. It completely discharged him. Civil Code, arts. 2194, 3032. He cannot consider the clause in relation to the renunciation of Routh's wife, as forming a suspensive condition of the agreement to give time. It does not appear either from the words of the instrument, nor from the acts of the parties, that they intended to make the existence of the agreement depend upon the fulfilment of the obligation to procure the renunciation. The act was perfected, and a few days after recorded in the parish of Concordia, where the mortgaged property was situated. It took effect immediately in favor of the bank, and protected them from the operation of other mortgages and liens subse-

quently recorded against their debtor. Routh's failure to comply with his undertaking in this respect, may entitle the bank to demand the rescission of the contract, after putting him in default ; but it will be the rescission of an existing agreement by virtue of the resolutory condition which is implied in all synallagmatic contracts. If the legal effect of the new agreement was to release the surety, its rescission may well revive the original obligation of Routh, but could not restore that of the surety, who was no party to such agreement. Civil Code, arts. 2038, 2040, 2041. 7 Toullier, Nos. 306, 315.

The counsel for the defence has made two points in this court :

1st. That the bank, in their contract with Routh, reserved their rights against the plaintiff, and that, therefore, the latter was not discharged by the extension of time they granted to their debtor.

2d. That after judgment against a surety, he becomes an absolute debtor, and can no longer be viewed in the light of a surety, and claim be benefit of the rules which govern the contract of suretiship.

I. The clause relied on by the bank, as containing a reservation of their rights against the plaintiff, is in the following words, to wit :

" Whereas the said John Routh has offered to grant the foregoing mortgage and security, for his individual liability resulting from the said notes and drafts, without prejudice to the rights which the bank may choose to exercise against the other parties thereto, for the purpose of obtaining a more prompt settlement of the said notes and draft ; and whereas the said Union Bank of Louisiana, and the said John Routh have agreed, in the event of the said notes and draft failing to be paid in part, or *in toto*, by the other parties, then and in that case the said notes and draft shall belong to the said Routh, after he shall have paid the whole amount of the said obligation. Now, therefore, it is hereby expressly agreed and stipulated, that the notes and draft, or whichever of them shall not have been paid by the other parties thereto, shall remain in the possession of the bank during the continuance of this mortgage, and that the same shall belong

and be delivered over to the said John Routh, so soon as his said obligation shall have been paid, to be used by him as he shall think fit; and all such sums as may be received by the bank on account of the said notes and draft, shall be applied to the credit of the said John Routh's obligation." This stipulation, when coupled with a previous part of the act, wherein Routh reserves his right to recover of the other parties to the notes and draft, after he shall have paid the bank, would seem to relate only to those parties against whom he would have a recourse to exercise after taking up his bond. The object apparently was, that the notes and draft not paid by such other parties, should be kept by the bank, and delivered to Routh as soon as his obligation was paid, to enable him to exercise such recourse. The plaintiff, who was only a surety, was not one of those parties; but admitting that this clause can be construed into a reservation of the rights of the bank against him, such a reservation in a contract to which he was not a party, cannot destroy the legal and immediate effect of the contract itself. Such a reservation is contrary to, and incompatible with the obligation of a surety, who is bound for the same thing as the principal debtor, and cannot be bound under more onerous conditions. Civil Code, art. 3006. If a new contract intervene between the latter and the creditor, whereby an obligation different from that to which the surety acceded, is substituted to it, the liability of the surety is at an end, and no reservation can operate so as to revive it. A reservation of this kind is, moreover, inconsistent with the very agreement which contains it. While the agreement dispenses the principal debtor from the performance of his former obligation, the reservation has for its object to insist upon its performance by the surety. The latter, upon paying the debt, would naturally call upon the principal debtor for immediate reimbursement. If the debtor, by reason of the reservation is bound to pay, he loses the benefit of the agreement which becomes a nullity. If, by reason of the agreement giving time, he is not bound to pay, the reservation amounts to nothing, and the surety is discharged, as he cannot be subrogated to the rights of the bank under the obligation to which he acceded. Thus it is seen that either the agreement itself, or the reservation must

eventually be treated as a nullity; and of the two, says a distinguished writer on this subject, it is more reasonable to regard the reservation as a nullity, because it was not assented to by the surety. Theobald, on Principal and Agent, p, 144, and the authorities there quoted.

In speaking of the extinction, by novation, of a surety's obligation, which under our law is as effectually destroyed by an extension of time granted to the principal debtor, Toullier says : " *Quelque* stipulation, quelque réserve, que le créancier puisse insérer dans le contrat de novation, en l'absence du fidéjusseur, il se fait à l'égard de ce dernier, une extinction totale, et non pas une suspension de son obligation. Vol. 7, No. 314. "Car," says the same author in another place, "une protestation ne peut empêcher l'effet nécessaire et essentiel d'un acte. C'est un principe constant, que toute protestation et réserve contraire à la substance même de l'acte où elle est contenue n'est d'aucune considération lorsque celui qui l'a faite pouvait agir autrement. No. 308. We conclude then, that no reservation which a creditor can make, in a contract containing a novation of the debt, or allowing a prolongation of time to the principal debtor, can preserve his rights against the surety who was not a party to such contract:

II. In relation to the effect of the judgment rendered against the plaintiff, this court held, in *Calliham* v. *Tanner*, that a judgment obtained against a surety did not change the character of his debt, nor the relation in which he stood to the principal debtor ; and that a prolongation of time granted to the latter released the obligation of the former, in the same manner as if there was no judgment against him. 3 Rob., p. 299. Upon further reflection, we have no reason to be dissatisfied with the opinion then expressed. A judgment does not create, add to, nor detract, from the indebtedness of a party; it only declares it to exist fixes its amount, and secures to the suitor the means of enforcing payment. If under the law, the debt creates a privilege or tacit mortgage, such privilege or tacit mortgage exists independent of the judgment rendered upon it. When a creditor obtains a judgment against the principal debtor and the surety, both are, to be sure, equally and absoluely bound for the debt; but why is it

that a payment of the judgment by the principal debtor releases the surety, or that a payment of it by the surety subrogates him to all the rights of the judgment creditor against the principal debtor? It can only be because the relation of principal and surety continues to subsist between them even after judgment. If so, the judgment creditor can do no act, whereby the rights or recourse of the surety against the debtor may be destroyed or impaired. If he make a novation, or grant time to the principal debtor, the surety is as effectually discharged as if the judgment had been satisfied. Civil Code, arts. 2194, 3032.

It is, therefore, ordered and decreed, that the judgment of the District Court be reversed, and that the judgment obtained by the Union Bank of Louisiana against Samuel Gustine, rendered on the 22d of December, 1840, be and remain without effect; and that the judicial mortgage, resulting from its registry in the office of the parish judge of Concordia, be cancelled and erased; and it is further ordered, that the reconventional demand set up by the defendants be dismissed. The appellees to pay the costs in both courts.