No. 693.—DARBY and TREMOULET, Syndics, *v.* EUPHEMIE FUSELIER, Widow, etc.

Darby & Tremoulet, commission merchants, in the city of New Orleans, made advances to A. Grevemberg to a large amount, predicated on a letter of credit written by Mrs. Widow Fuselier, his mother, requesting said firm to make advances to and accept the drafts of said Grevemberg to enable him to pay for a plantation. Grevemberg obtained the advances and afterwards shipped his sugar crops to said merchants, which far exceeded in value the amount of advances made to him, the proceeds of which he was allowed to draw out without reserving the amount of the advances. Grevemberg died, and his merchants failed to present and enforce their privileges against his es'ate. Held—that the failure on the part of said Darby & Tremoulet to enforce payment for their advances, while it was in their power, discharged the surety who was bound on the letter of credit. That under this state of facts, the party giving the letter of credit is discharged by their laches.

APPEAL from the Third Judicial District Court, parish of St. Mary. *Train, J. B. F. Winchester* and *Tucker & Davis,* for plaintiffs and appellants. *DeBlanc & Perry,* for defendant and appellee.

TALIAFERRO, J. The plaintiffs, as syndics of their former firm of Darby & Tremoulet, bring this action to recover the sum of $35,749 54, with interest.

. They predicate their claim upon a letter of credit directed to them by the defendant requesting them to make advances to her son, Charles A. Grevemberg, and accept drafts drawn upon them by him to enable him to pay the price of a plantation which he had purchased in the parish of St. Mary, from W. W. Jenkins. The plaintiffs allege that they made the required advances for the said Charles Grevemberg to an amount exceeding $55,000. That this indebtedness was reduced by September, 1862, to the amount which they now sue for.

The answer of the defendant admits her signature to the letter of credit, but specially denies all the plaintiffs' allegations as to indebtedness or liability arising from the letter of credit they declare upon.

The defendant had judgment in her favor and the plaintiffs appeal.

The facts presented are, that in the year 1858 Charles A. Grevemberg, the son of the defendant, entered into an agreement with Jenkins, whose plantation, with a large number of slaves upon it, was under seizure at the suit of Stewart Wilkins Fisk, Testamentary Executor, v. W. W. Jenkins, and advertised for sale on the second of July, 1858, by which he was to become the purchaser at the price of $115,000. In consideration of this purchase, Grevemberg was bound to transfer his plantation in the parish of St. Landry to Jenkins at the price of $45,000, and to pay and discharge for him the amount due the seizing creditors—$29,955 10. Besides this he assumed the payment of other debts of Jenkins—one to Jackson & Co. of $17,075 39; one to the estate of Louet of $666 66⅔; one to D. & U. Urquhart of $14,333 72, and a payment to Jenkins of $7,964 97½.

To insure the performance of this undertaking, Grevemberg, on the third of July, 1858, executed a mortgage by notarial act, in favor of Jenkins upon the land purchased from him and a number of slaves attached to the cultivation.

The stipulations of the parties seem all to have been carried out fully. It seems to be established also that the plaintiffs advanced money and accepted drafts to enable Grevemberg to fulfill his obligations to Jenkins, and for that purpose they paid for Grevemberg about $55,000.

It is shown that the commercial partners, Darby & Tremoulet, were the factors of the defendant and her son, from June, 1858, to September, 1862. That the business of the mother and her son was carried on separately, and the defendant during that period was in a state of opulence, making large sugar crops and shipping them to the house of Darby & Tremoulet; that the defendant had annually large sums of money over and above the wants of herself and her plantation, without debts to encumber her, and that she was in the habit of annually distributing her surplus funds among her children, and for this annual distribution the son, Charles Grevemberg, came in for a large share. It is also shown that Grevemberg himself had a large income from his

plantation and that he made large shipments of sugar to his factors. For these parties the house of Darby & Tremoulet held, during the years mentioned, funds to the amount of half a million.   The solvency and credit of Mrs. Fuselier were unquestioned.   She was able at any time during the period the plaintiffs were acting, as her factors to discharge the debt for which she was bound for her son.   The son also had means in the hands of Darby & Tremoulet during the period from July, 1858, to September, 1862, to have discharged the debt.   These funds should have been applied to its payment, for of all the debts of 1858 and 1859 that for the advances to pay for the plantation which was mortgaged was the debt Grevemberg had the most interest in discharging.   It bore interest.   It was the oldest of the debts shown in the subsequent accounts rendered by the factors.   A running account was kept between the parties, and the balance shown in September, 1862, against Grevemberg is not likely to be any balance of the price of the plantation from Jenkins, but a balance of all the accounts of Darby & Tremoulet against Grevemberg.   There has certainly been laches on the part of the plaintiffs in not giving the defendant notice of the non-payment of her son's indebtedness, and preserved for her all rights of action under the mortgage, if they intended to hold her bound in the event Grevemberg failed to reimburse them their advances.   Instead of doing this, we find that after the death of Grevemberg, in 1862, and the insolvency of his estate, the plaintiffs figure as ordinary creditors on the tableau of debts of his estate, having failed to become subrogated to the rights of the mortgagee, who was entitled to the first mortgage on a large tract of land embracing a valuable sugar plantation.

A prolongation of the term granted to the principal debtor without the consent of the surety will release the latter.   C. C. article 3032.

The creditor can do no act whereby the rights or recourse of the surety against the debtor may be destroyed or impaired.   If he make a novation or grant time to the principal the surety is as effectually discharged as if the claim had been satisfied.   3 Rob.; 10 Rob. 412.

There are other points of defense in this case not without weight, but which we deem it not important to examine at length, concurring in the opinion of the District Judge that the laches of the plaintiffs on this point alone are shown by their own evidence and preclude them from recovering.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed with costs in both courts.