No. 5432.

J. DAVIDSON HILL & Co. vs. MRS. ADELAIDE BOURCIER AND B. M. POND.

| | |
|---|---|
| 29 | 841 |
| 105 | 338 |

| | |
|---|---|
| 29 | 841 |
| f123 | 327 |

The appellate jurisdiction of this court is not divested by the fact that, pending an appeal in any particular case, the appellant has become a bankrupt. In passing on the question of their appellate jurisdiction, this court will consider no fact which does not appear in the transcript of appeal.

Pending a suit against a principal, and his surety, the surety can not ask that proceedings against him shall be arrested until the property of the principal has been discussed. In such case he can only ask, after having complied with certain requirements exacted by law, that the property of the principal shall be discussed under execution, before recourse on *his* property is had.

The granting of a new lease, after a former lease has expired, will not work a novation, when nothing appears in evidence showing that the parties intended to novate.

The money received by a lessor for rent due on account of a new lease, will not be imputed to the payment of any balance due by the lessee on a former lease, of the same property, unless so stipulated by the lessee.

The mere neglect of a privilege creditor to sue will not release the surety of the debtor, even to the extent of the value of the privilege held by the creditor, unless it be proved that in consequence of such neglect, the privilege was lost.

Where a judgment creditor is clothed by law with a certain privilege, or pledge, the mere absence of any express recognition of the privilege, or pledge, in the judgment of the court, does not impair the lien.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier, J.*

: *Ogden & Hill*, for plaintiffs and appellees.

*Clarke, Bayne & Renshaw*, for defendant.

The opinion of the court was delivered by

MARR, J., Appellees leased a dwelling to Mrs. Bourcier for one year,

ending the thirtieth of September, 1873; and B. M. Pond became her surety for the performance of the stipulations of the contract.

At the expiration of this term a new lease was granted to Mrs. Bourcier, at a reduced rent, without security, for the year ending the thirtieth of September, 1874; and she continued in the occupation of the premises.

The rent for the last six months under the first lease was not paid; and, in January, 1874, suit was brought against Mrs. Bourcier and Pond to recover the amount. She allowed judgment by default to be taken and confirmed against her. Pond answered that he was no longer liable as surety, because the lessors had novated the contract with Mrs. Bourcier, and had accepted her as their tenant for a prolonged period; and had received from her rent sufficient to discharge the debt for which he was surety; and had released securities and privileges held by them under the contract of lease sued on; and that they were bound to discuss the effects of Mrs. Bourcier before proceeding against him.

From the judgment of the district court against him Pond took this appeal; and it was returnable and was returned in this court on the first Monday of November, 1874.

When the cause came up for hearing counsel for appellant stated that his client had commenced proceedings in bankrdptcy in March, 1876; and he filed a paper in which that fact is set forth, with a certificate of the Clerk of the United States District Court that the proceedings in bankruptcy were still pending in that court on the ninth of November, 1877. It was suggested in this paper that this court no longer has jurisdiction, and that the cause must be remitted to the United States District Court.

In Serra é Hijo vs. Hoffman & Co., 29 An. 17, we decided that the jurisdiction of this court was not divested by the bankruptcy of the appellant pending the appeal; and we are satisfied of the correctness of that decision. Having appellate jurisdiction only, this court is required, by the appeal, to determine whether, upon the case made in the court of first instance, as shown by the transcript of the record and proceedings, the judgment appealed from is correct. To determine this question we must look to the transcript alone, for the obvious reason, in addition to the positive terms of the law, C. P. 894, etc., that nothing which may have occurred since the judgment was rendered can make it either correct or erroneous. The satisfaction or discharge of a judgment pending the appeal, must be set up in a court of original jurisdiction, against the enforcement of that judgment, after the appeal has been determined; and not in the appellate tribunal.

In order to guard against misapprehension, we take occasion now to add that, when a judgment is affirmed on appeal, the decree of affirm-

NEW ORLEANS, DECEMBER, 1877.    843

Hill & Co. vs. Mrs. Adelaide Bourcier and Pond.

ance gives it no new force or effect. If a discharge in bankruptcy could have been set up against the enforcement of the judgment, in the event that no appeal had been taken, the affirmance of that judgment by this court could not prevent or interfere with that legal consequence and effect ; and in no event could the action of this court, on the appeal, deprive the appellant of any right, or remedy, or relief, under the bankrupt law, against that judgment, to which he may have become entitled after it was rendered.

.The surety has the right, under certain circumstances, to demand the discussion of the property of the principal debtor. Where suit is brought against the surety alone, he may interpose the plea, and compel the creditor to discuss the principal debtor. The effect of this is to stay proceedings against the surety until judgment has been obtained against the principal debtor, and execution against his property has proved insufficient. When the suit is brought against the surety and the principal debtor the plea of discussion does not require or authorize any suspension of the proceedings ; but the judgment will be so modified as to require the creditor to proceed by execution against the property of the principal, and to exhaust it before resorting to the property of the surety. Bernard vs. Custis, 4 Martin, 215; Banks vs. Brander, 13 La. 276.

In either case, the surety who desires to avail himself of this right must demand it *in limine*, " on the institution of proceedings against him." He must, moreover, point out to the creditor property of the principal debtor, not incumbered, subject to seizure ; and must furnish a sufficient sum to have the discussion carried into effect. R. C. C. 3045, 3046, 3047. A plea which does not meet these requirements must be disregarded. Robechot vs. Folse, 11 La. 136 ; Banks vs. Brander, 13 La. 276.

" Novation is a contract, consisting of two stipulations : one to extinguish an existing obligation ; the other to substitute a new one in its place." R. C. C. 2185. We find in the record no evidence of any such contract. The granting of a new lease, at the expiration of the first term, did not extinguish, nor did it in any manner impair, the rights and obligations of the parties under the first lease : nor does it tend to show the substitution of a new contract or obligation in place of the first contract. These propositions do not admit of discussion ; nor do they require the citation of authorities.

We have searched the record in vain for evidence tending to show that any payment was made on account of the rent sued for. Mr. Hill, the only witness who says any thing on this subject, testified on the ninth of March, 1874, that he had collected of Mrs. Bourcier the rent under the new lease, for four or five months, at $125 a month ; and that the whole amount sued for, $900, was still due and owing at that time. We know

844 SUPREME COURT OF LOUISIANA,

Hill & Co. vs. Mrs. Adelaide Bourcier and Pond.

of no law which compelled him to impute the money thus collected on account of the new lease to the debt due under the first lease. Mrs. Bourcier, owing both debts, might have required any money paid by her to her creditor to be imputed to the one or the other at her option ; but the fact, as proven by Hill, that the collections were on account of the new lease, shows that she required the imputation to be made to the new debt, or that it was made to that debt by the creditor with her con-- sent and approbation.

Hill testified that Mrs. Bourcier was still in the occupation of the leased premises ; and that he had no knowledge of any change in her furniture.

Counsel for appellant argues that the failure of the lessors to enforce their privilege on the furniture, and to pray for judgment with privilege in this case, prejudiced his right of subrogation, and discharged him. He relies upon article 3061, R. C. C., which is as follows :

"The surety is discharged when by the act of the creditor the subrogation to his rights, mortgages, and privileges can no longer be operated in favor of the surety."

Jurisprudence has settled the law that the surety is not discharged by the mere omission of the creditor to sue the principal, or to enforce his privilege. If by the act of the creditor, or his willful neglect or want of proper diligence, any of the securities, rights, mortgages, and privileges by which the debt was secured, are lost, so that they can no longer be made available, the surety is discharged to the extent of their value. See Parker vs. Alexander, 2 An. 188 ; Saulet vs. Trepagnier, 2 An. 427; Bank vs. Escoffie, 2 An. 830 ; Bank vs. Ledoux, 3 An. 674 ; Shields vs. Barrow, 13 An. 57 ; Succession of Pratt, 16 An. 357 ; Elmore vs. Robinson, 18 An. 651 ; De Nouvion vs. Hodgson, 23 An. 438.

The Code has not left the surety at the mercy of the creditor ; on the contrary, it affords him ample means of protecting himself. In the present case, at the time the suit was brought, Mrs. Bourcier occupied the leased premises ; and it is to be presumed, the contrary not appearing, that she continued to occupy up to the expiration of the term under which she held, the thirtieth of September, 1874. All the furniture in the house was subject to the lessor's right of pledge. There is no proof of the value of this furniture ; but it is not shown that any of it had been removed. The suit was against principal and surety ; and when Pond was cited he might have paid the debt immediately, and thus have become *dominus litis.* He would have been subrogated, by mere operation of law, to all the rights, actions, and privileges of the lessors against the lessee ; R. C. C., article 3052 ; and he might have exercised and enforced them for his own account and benefit. In Robinson vs. Staples, 5 An. 712, it was expressly decided that the lessor need not seize provis-

Hill & Co. vs. Mrs. Adelaide Bourcier and Pond.

ionally in order to preserve his privilege. Nevertheless, if Pond had paid the debt, before judgment, he might have amended the pleadings, and have seized the furniture provisionally, if he had deemed this necessary for the enforcement of the privilege. The fact that it was not necessary is demonstrated in this case, because the furniture was not removed, nor is there any proof of any thing having been done with respect to it which placed it beyond the reach of the lessors' privilege.

It is urged that as the lessors obtained a judgment for the rent due, without any recognition of their privilege, they had lost that privilege; that they could no longer have enforced it themselves ; and that Pond could not have acquired, by subrogation, the rights and privileges which had thus been lost.

This view seems to be founded on a misapprehension of the law. There is a plain distinction between those cases in which the seizure of the property alone gives the privilege, as in attachment, and those in which the debt itself creates the privilege. In the first class of cases it has been held that the attaching creditor has no privilege if he does not pray for it, and have it awarded to him on the final judgment. Succession of Caldwell, 8 An. 42. And yet, in Love vs. Voorhies, 13 An. 549, it was decided that where the property attached was released on bond, and judgment was obtained against the debtor in which no reference or allusion was made to the attachment, the omission of the usual phrase "with privilege on the property attached," did not discharge the surety on the release bond.

In the other class of cases, where the privilege does not result from the seizure, but is created by, and is a legal accessory of, the debt, it exists independently of the judgment. In Parker vs. Starkweather, 7 N. S. 340, plaintiff seized, under *fieri facias,* a quantity of blacksmith's tools, which defendant sought to have released, under article 644 of the Code of Practice. The tools would have been exempt from seizure under execution on a judgment for an ordinary debt; but they were liable to the lessor's right of pledge and privilege ; and the suit in which the judgment was rendered was for rent. The court, reversing the judgment of the lower court, which released the seizure, said :

"It is necessary to remark that, in this instance, the seizure was made under a *fieri facias;* but the suit in which the judgment was rendered was for rent ; and we are of opinion that the privilege of the lessor was not lost by the form of execution in which he sought to enforce it."

In Holmes vs. Holmes, 9 Rob. 118, the wife, entitled to a tacit mortgage, omitted to pray for its recognition ; and she sought, by appeal, to have the judgment so amended as to allow her mortgage rights, and to permit her to enforce them. The court said :

"If the appellant is entitled to a mortgage on her husband's property,

to secure the amount sued for, it arises from the law itself, and there is, perhaps, no necessity for mentioning it in the judgment, as a mere omission to recognize it could not deprive plaintiff of its effect, if she is really entitled to enforce it. It will be time enough to inquire into plaintiff's alleged right of legal mortgage, if ever it comes in conflict with the rights of her husband's creditors."

In Gustine vs. Union Bank, 10 Rob. 418, the same learned court, through a different organ, laid down the same doctrine in these terms: "If, under the law, the debt creates a privilege or tacit mortgage, such privilege or tacit mortgage exists independent of the judgment rendered upon it."

To bring the present case within these decisions, it is only necessary to add, that the suit was brought upon the lease and the rent notes; so that it was a suit for rent; and the debt was one which created, and to which was attached as a legal accessory, not merely a privilege, but a right of pledge on the movables of the lessee, and those belonging to third persons found on the leased premises. R. C. C. article 2705, et seq. 3218.

It is elementary that a judgment is conclusive, and constitutes rem adjudicatam only with respect to what was the object of the demand. R, C. C. 2286. The mortgage creditor, when he proceeds via executiva. neither asks for nor obtains any judgment in personam against the debtor. He merely asks that the mortgaged property be seized and sold in satisfaction of the mortgage debt. Suppose he should choose to obtain a judgment in personam on the mortgage notes. Any property of the debtor not exempt by law, might be seized under fieri facias on that judgment; and if the mortgaged property should be seized and sold under that writ, the proceeds would be applied to it, unless some one should intervene and claim a superior right. The mortgage creditor would exhibit his mortgage, and if it outranked the claim of the opposing creditor, the opposition would be defeated. To enforce a mortgage or a privilege the property must be sold; and, as the court said in Parker vs. Starkweather, 7 N. S., the form of the writ can not prejudice the privilege.

The landlord having a privilege and right of pledge, as in Parker vs. Starkweather, chooses to obtain a judgment in personam against his debtor for the rent due, and to enforce it by fieri facias. The proceeds of sale will be paid to him, of course, unless a superior right is asserted. In answer to such a claim the lessor would show that the suit in which the judgment was rendered was for rent, and that the property sold was that which was affected with his privilege and right of pledge; and no claim inferior to this could be set up successfully against him.

As the court well said in Holmes's case, 9 Rob. 119, it will be time enough to inquire into the right of the creditor to the proceeds of the sale under execution, when it conflicts with the rights of others. Until such

a conflict does arise in a contest for the proceeds, the privileged creditor, whose debt creates the privilege, has no occasion to assert or to maintain his privilege, because, no matter what may be the form of the judgment or the writ, the privilege exists independently of either.

The Code of Practice, article 156, provides that "if one demand less than is due him, and do not amend his petition in order to augment his demand, he shall lose the overplus;" and article 157 declares that if the creditor fail to claim the interest due him, he can not afterward demand it in another action.

These articles relate to the amount of the demand; and they can have no application to cases in which the creditor, entitled by law to a privilege, proceeds *in personam* for the debt, and seizes, under *fieri facias*, the precise property affected with his privilege. In this case, we have seen that Pond, if he had paid the debt before judgment, would have become *dominus litis*, and might have amended the pleadings, and caused the furniture subject to the lessors' privilege to be seized provisionally, and sold in satisfaction of the debt. If he had paid after the judgment against Mrs. Bourcier, he might have had execution issued on that judgment and have seized and sold any property belonging to Mrs. Bourcier, not exempt by law, including the furniture in the leased premises; and no one, not having a right superior to that of the lessor could have competed with him for the proceeds. The furniture, being still in the leased premises, was subject to the rights of the lessors, just as it was at the beginning and as it was at the end of the term for the rent of which Pond was surety. It was also affected with the lessors' privilege for the rent under the new lease; but if the lessors had received the rent due under the first term from the surety, he would have been subrogated to their rights under the first lease, which was superior to that under the new lease. It would have been bad faith on their part, and the law would not have permitted them to assert even equality of right, much less superiority, to the prejudice of their subrogee, the surety; and they would have been compelled to yield to him in rank and preference.

It is not shown that Mrs. Bourcier owed any other debt; and *non constat* that there would have been any conflict or contest for the proceeds of the sale of the furniture found in the leased premises; but if such conflict had arisen, nothing had occurred to impair the privilege and right of pledge by which the debt was secured.

There is no evidence in the record of any act on the part of the lessors by which the surety's right of subrogation was either lost or impaired; nor of any fact which discharged his liability under the contract. We do not know, because the record does not inform us, and we can not go outside of it to inquire, what may have occurred since the appeal was

taken tending to the discharge of the surety. The transcript discloses no error in the judgment appealed from; and that is all that we intend to decide, and it is precisely what we do decide.

The judgment appealed from is, therefore, affirmed with costs.

DeBlanc, J. I concur in the decree which precedes.