## SUTTON v. MORELAND et al.
### No. 5499.

Court of Appeal of Louisiana. Second Circuit.

July 19, 1937.

Rehearing Denied Oct. 29, 1937.

Rusca & Cunningham, of Natchitoches, for appellants.

Arthur C. Watson, of Natchitoches, for appellee.

HAMITER, Judge.

Prior to January 23, 1934, the stock of the Powhattan Mercantile Company, Inc., a small Louisiana corporation with its domicile in Natchitoches parish, was owned in the proportions of 20 per cent. by the Exchange Bank of Natchitoches, La., 64 per cent. by Dr. W. E. Moreland, and 16 per cent. by J. W. Wilson. In other words, such bank owned one-fifth of the stock and the other two stockholders owned the remaining four-fifths thereof.

G. R. Sutton, plaintiff herein, was desirous of acquiring the interest of Moreland and Wilson in the corporation, and after negotiating for some time a purchase was consummated on January 23, 1934. The stock certificates which evidenced the sellers' interest were duly indorsed and delivered to the purchaser. The following agreement was executed by the parties in connection with the transfer:

"State of Louisiana
"Parish of Natchitoches

"Know All Men by These Presents

"That the following agreement has this day been entered into between G. R. Sutton, a resident of the City of Natchitoches, Louisiana, Party of the First Part, and Dr. W. E. Moreland, a resident of Powhattan, Natchitoches Parish, La., and J. W. Wilson, a resident of Natchitoches, La., both parties of the second part, viz;

"G. R. Sutton hereby binds himself and agrees to purchase from Dr. W. E. Moreland Thirty Two shares of the capital stock of the Powhattan Mercantile Co., Inc., and from J. W. Wilson eight shares of the capital stock of the Powhattan Mercantile Co., Inc., for the sum of $3500.00 for the said thirty two shares of said stock and $875.00 for the said eight shares of said stock, cash to be paid them by G. R. Sutton for said stock;

"It is distinctly agreed and understood that said purchase of said stock is based upon the following agreement and mutual understanding between all parties herein to-wit;

"The said corporation represented herein by its officers, W. E. Moreland, President and J. W. Wilson, Secretary-Treasurer, for and on behalf of said Corporation agrees to pay all outstanding bills for merchandise, which merchandise has been delivered up to and including Jan. 23rd, 1934; and that all accounts due the said Powhattan Mercantile Co., Inc., are the property of and to be collected by and for the benefit of the stockholders as of the close of business January 23rd, 1934; and that all cash on hand and in bank and all such collections and equities as of the close of business Jan. 23rd, 1934, are for the benefit of all stockholders as of Jan. 23rd, 1934.

"Done and signed in the presence of two witnesses at Natchitoches, La., on this Jan. 23rd, 1934.

"W. E. Moreland, M. D.
"J. W. Wilson
"G. R. Sutton

"Witness:
"Frank Rambin
"Dan Pearson."

In March of 1934, Mr. T. J. Barnes, an accountant and the cashier of the aforementioned bank, prepared the federal income tax return of the corporation for the calendar year 1933. The compilation was based on information furnished by Mr. Wilson. In the return a deduction of $2,625.43 was claimed and taken, the reasons given in its behalf being that such amount represented bad debts charged off during the year 1933. As a result of this deduction,

no tax was listed as being due by the corporation.

Subsequently, the Department of Internal Revenue caused to be made an investigation of the corporation's affairs, and determined that the charged-off accounts receivable constituted an accumulation of bad debts from years prior to 1933. Accordingly, the claimed deduction was disallowed and there was a consequent increase in income of $2,625.43. In the latter part of 1935, demand was made on the corporation for payment of a tax, with interest thereon, on said increased income totaling the sum of $469.-23.

It was because of the described income tax that this litigation arose. In his petition, which was filed in his individual capacity, plaintiff alleged in substance that Moreland and Wilson agreed on the transferring of the stock to pay all debts of the corporation as of January 23, 1934, except a hereafter referred to mortgage indebtedness, in consideration of their retaining all cash and accounts receivable owned by the corporation as of that date; that the income tax constituted such a debt and was covered by the agreement; and that he was forced to pay it to prevent the filing of a lien. He prayed for a solidary judgment against Moreland and Wilson in the amount of $375.39, this being four-fifths of the amount of the tax.

Defendants excepted to the petition as disclosing no right and no cause of action. The exceptions were referred to the merits. In their answer, they denied responsibility for the tax item. They affirmatively averred that the above-quoted contract evidenced the full agreement of the parties, and that the corporation paid the accounts payable which were listed and provided for in the agreement.

A judgment in plaintiff's favor as prayed for was rendered after trial of the case. Defendants appealed.

Exceptions of no cause and no right of action have been filed in this court by defendants, and are vigorously urged.

■ Under the theory that a corporation is considered for most purposes as a legal entity entirely distinct from its members, the stockholders of a corporation ordinarily cannot be held personally liable for its debts. Section 19 of Act No. 250 of 1928. It is only under special circumstances that liability of that character attaches, such as where the stockholders bind themselves for the corporate debts under a good and valid contract. Citizens' Bank of La. v. Folse et al., 123 La. 918, 49 So. 641. In the instant case, plaintiff contends that defendants' liability for the tax indebtedness arose by reason of their special contract with him.

The record discloses that the property of the Powhattan Mercantile Company, Inc., prior to the date of the aforementioned transfer, consisted of a stock of merchandise, some real estate, cash in bank of approximately $1,000, and certain accounts receivable. The real estate was encumbered with a mortgage of approximately $1,000. Reference to this mortgage is omitted in the aforequoted written instrument, and this omission and certain testimony adduced convince us that the writing did not evidence the full agreement and understanding of the parties. Our appreciation of the agreement is that the cash in bank and all sums collected from the accounts receivable would be employed in paying all corporate debts, with the exception of the mortgage indebtedness, and the excess thereof would be paid in the form of dividends to the then stockholders, the Exchange Bank, Moreland and Wilson, proportionately according to the amount of stock owned by each.

■ The written portion of the agreement lends support to our conclusion that there was no personal assumption of the debts by the defendants. It states specifically that the corporation agreed to pay the debts therein described; and it can reasonably be assumed, and it is testified to by a disinterested witness, that the other debts were to be paid with corporate funds. Then, too, in effecting the agreement, necessarily Moreland and Wilson were acting as agents and representatives of the corporation. They could neither have dealt with corporate assets nor have bound the remaining stockholder if they had acted in a personal capacity. And in accordance with the agreement, all known debts, except that of the mortgage, were duly paid, and the remaining funds were distributed to the then stockholders.

■ We find it unnecessary to pass upon the question of whether or not defendants can be compelled to contribute toward payment of the income tax to the extent of the amount of dividends received by them. Even if such obligation exists, it is not in favor of plaintiff in his individual capacity. Only the corporation would have the right to compel contribution from defendants.

The debt in question was that of the corporation, and it was with corporate funds that payment thereof was to be made. The failure of payment by defendants could result in a contribution claim in favor of no one except the corporation. The record in the case contains no act of subrogation and assignment of the claim from the corporation to plaintiff, and we do not find present the elements required by article 2161 of the Revised Civil Code for the existence of a legal subrogation.

For the foregoing reasons, the judgment of the trial court is reversed and set aside, and the exceptions of no cause and no right of action filed by defendants are sustained and plaintiff's suit is dismissed at his cost in both courts.