Henwood *v.* Home Indemnity Company, Appellant.

Argued September 29, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for appellant.

*Edward J. Mingey,* for appellee.

OPINION BY CUNNINGHAM, J., January 30, 1940:

On November 15, 1938, this case was tried on the pleadings before BLUETT, J., of the court below, and boils down to the single question whether the defendant indemnity company was entitled to retain out of the proceeds of certain collateral deposited with it by the plaintiff, and later directed by her to be sold, an item of $168.04. The court below found in favor of the plaintiff and entered judgment against defendant for that amount with interest from March 5, 1935, or a total of $205.56. The defendant has appealed from the denial of its motion for judgment notwithstanding the finding.

The question of law here involved relates to the proper construction, in the light of the uncontroverted facts, of the agreement under which the collateral was deposited.

Early in October, 1930, John Henwood, plaintiff's husband, became the lessee of a garage, along with the machinery and equipment therein, at No. 126 Montgomery Avenue, Cynwyd, Montgomery County, for a term of three years. As one of the conditions for making the lease, the lessors, Percy McGeorge et al., demanded that Henwood give them a bond, in the sum of $2,000, conditioned that the machinery and equipment in the garage be maintained and redelivered to them in good

order at the termination of the lease. The appellant indemnity company agreed to become surety on the bond required of her husband, provided plaintiff deposited with it collateral sufficient to indemnify it. She agreed to deposit with appellant 77 shares of the capital stock of Philadelphia Traction Company.

Accordingly, an agreement in writing was executed by the parties to this suit on October 23, 1930, in which plaintiff is described as the "Depositor" and appellant as the "Surety." As the present controversy relates to the proper construction of this writing, it will be necessary to set forth its provisions with considerable detail. It is general in its terms and contains no specific reference to the bond of $2,000 given to the lessors of the garage and equipment. The provisions of the instrument now material read:

"Whereas, in consideration of the deposit of collateral security described in the receipt hereto annexed, the Surety has executed or procured the execution of, *or may hereafter execute* or procure the execution of, *obligations* of Guaranty or Suretyship on behalf of John Henwood, 126 Montgomery Ave., Cynwyd, Pa.

"Now, therefore, in consideration of the premises and other good and valuable consideration, receipt whereof is hereby acknowledged, it is agreed:

"First: That the Surety shall have the right in its discretion to retain said collateral, any substitutions therefor, and additions thereto or the proceeds of such collateral, substitutes and additions until the Surety shall have received satisfactory evidence of the termination of liability on account of executing or procuring the execution of *obligations* of Guaranty or Suretyship as hereinbefore referred to, and until all premiums due on said *obligations* of Guaranty or Suretyship have been paid and when these conditions shall have been fulfilled, the remainder of said collateral, any substitutions therefor, additions thereto or proceeds thereof shall be returned to the Depositor.

"Second: In case the Surety for, or by reason of or in consequence of, having executed or procured the execution of *any* obligation of Guaranty or Suretyship as hereinbefore referred to, shall for any cause at any time be threatened with or sustain or incur any loss, costs, charges, suits, damages, counsel fees or expenses of any kind or nature, the said Surety shall have at any time or times hereafter full power and authority without advertisement or notice (which are hereby expressly waived) to hypothecate and pledge or to sell, assign, and deliver said collateral, any substitutions therefor, or any additions thereto, or any part thereof, at any broker's board or at public or private sale, free from all rights of redemption on the part of the Depositor (which rights are hereby expressly waived). In case of any such sale, the Surety shall first deduct all the expenses for collection, sale or delivery of said collateral and may then appropriate all of the proceeds or such part thereof as may be necessary to fully reimburse the Surety for any loss, costs, charges, suits, damages, counsel fees or expenses of whatever kind or nature sustained or incurred 'on account of executing or procuring the execution of *any obligation* of Guaranty or Suretyship' as hereinbefore referred to and the Surety shall have the right to apply such proceeds or any part thereof that may be necessary, to the payment of any premiums due on *any* of said *obligations* of Guaranty or Suretyship, the remainder of said collateral or proceeds thereof, if any, shall then be returned to the said Depositor." (Italics supplied.)

Annexed to the agreement is the following: "Receipt for Collateral. Received from the Depositor named in the within agreement the following: Cert. No. 22871 representing 77 shares capital stock of Philadelphia Trac. Co. as collateral security subject to all and singular, the terms of the within agreement."

On the day following the deposit of the collateral, appellant entered into another "obligation" on behalf

of Henwood. It executed as surety for him a bond, in the amount of $500 to the State of Pennsylvania, conditioned for the payment by Henwood to the state of all liquid fuel taxes collected by him.

Henwood, as principal in both bonds, breached the condition of each. The claim of the obligees in the $2,000 bond—the lessors of the garage—for damages was adjusted at $250. By direction of plaintiff the collateral was sold; the price obtained was $1,240.73; settlement was made with the obligees in that bond and appellant's liability thereunder terminated.

As set out in detail by appellant in its affidavit of defense, under "New Matter," Henwood during the months of November and December, 1930, and January 1931, collected liquid fuel taxes in the aggregate amount of $101.03, but failed to remit any part thereof to the Commonwealth.

Appellant having paid this amount to the Commonwealth, in discharge of its obligation under the $500 bond, asserted it was entitled, under the provisions of the agreement pursuant to which the collateral was deposited, to retain out of the proceeds thereof the amount paid the Commonwealth, plus certain charges and unpaid premiums on the bond, etc., in the total amount of $168.04. Plaintiff does not question the amount of this item, if appellant is entitled to retain anything by reason of having executed the $500 bond of October 24, 1930, on behalf of her husband. The remainder of the proceeds of the collateral has been paid to plaintiff.

We are unable to agree with the court below that the collateral was pledged solely and exclusively for the protection of appellant in executing the bond of $2,000 for the faithful performance by Henwood of the terms of the lease of the garage including the machinery and equipment therein. The language of the pledge is unambiguous and clearly provides that it is made because appellant "has executed . . . . . . or may hereafter execute

...... obligations ...... on behalf of" plaintiff's husband.

The obvious purpose of plaintiff in depositing the securities was to aid her husband in operating the garage. Ability to supply his patrons with gasoline would be an integral part of the business in which he was about to engage. Throughout the contract of pledge reference is made to "obligations" and "any obligation" of plaintiff's husband. If it had been the intention of the parties to restrict the pledge to his obligations under the lease it would have been easy for them to have specifically referred to that instrument in the contract of pledge and restricted the use of the collateral to that purpose. Instead of so doing, they made it broad enough to cover any obligations of guaranty or suretyship executed on behalf of the husband. We think the present case falls within the principle announced in *National Bank of Chester County v. Thomas*, 220 Pa. 360, 69 A. 813, to the effect that whether a contract of the nature of the one here involved is restricted to a single transaction, or is to continue in force until revoked, should be determined by a consideration of the terms, scope and character of the instrument itself and the situation of the parties at the time it was executed. See also *Oleon v. Rosenbloom*, 55 Pa. Superior Ct. 1, affirmed 247 Pa. 250, 93 A. 473.

This is not a case in which an effort is being made to hold collateral, deposited for loans made to an individual, as security for debts due from a partnership of which he was a member, as was the situation in *New Bethlehem Trust Co. v. Spindler et al.*, 315 Pa. 250, 172 A. 309, cited in behalf of plaintiff. Another case upon which she relies is *Heffner v. First National Bank of Huntingdon*, 311 Pa. 29, 166 A. 370. There, however, it was sought to apply the surplus from the proceeds of securities, owned by one of two comakers of a note and pledged for its payment, to the payment of joint obligations of the other comaker and third persons. *Kelter,*

*Trustee, v. American Bankers Finance Co.,* 306 Pa. 483, 160 A. 127, is also clearly distinguishable upon its facts.

For the reasons herein stated we think the appellant indemnity company was entitled to a finding and judgment in its favor.

Judgment reversed and here entered for appellant.