**PUBLICKER DISTILLERS PRODUCTS, INC.**

v.

**PELICAN STATE DISTRIBUTORS, INC., Jack J. DiMaggio, and Louis Costa.**

Civ. A. No. 79–3482.

United States District Court, E. D. Louisiana.

Nov. 21, 1980.

Clarence F. Favret, Jr., New Orleans, La., for plaintiff Publicker Distillers Products.

Thomas W. Tucker, New Orleans, La., for defendant/movant Costa.

Ellis Jay Pailet, New Orleans, La., for defendant/movant DiMaggio.

CHARLES SCHWARTZ, Jr., District Judge.

This matter arises on the motion of defendants Jake J. DiMaggio and Louis Costa for summary judgment against plaintiff Publicker Distillers Products, Inc. DiMaggio and Costa were operatives of Pelican State Distributors, Inc., a Louisiana corporation. Publicker sued Pelican for a debt of $126,150.93, plus interest. It named DiMaggio and Costa as codefendants in their alleged capacity as individual guarantors of Pelican's debt to Publicker. By agreement of the parties, these motions for summary judgment were submitted to the Court without oral argument.

DiMaggio and Costa predicate their prayer for summary judgment upon the theory that Pelican, as is undisputed, converted its once open account debt to Publicker into a series of eight interest–bearing notes. Movants suggest that this conversion represented a novation, and that the novation, by its nature, cancelled the pre–existing open

account debt and, with it, the personal guaranty of Costa and DiMaggio, Pelican's shareholders, to make good their pre–existing obligation to pay the open account debt.

Publicker's opposition to the motion is two–pronged. First, it contends that the open account debt was never extinguished by novation. As an alternative, it maintains that, even if the open account debt was extinguished by novation, the defendants are still personally liable because the guaranty which they signed with respect to the open account debt applied not only to that particular debt but, by its own terms, to all future indebtedness (i. e., for these purposes, the notes subsequently drawn by Pelican in favor of Publicker).

Consequently, we must first determine whether the substitution of interest–bearing notes payable to Publicker constituted a novation of the older, open account indebtedness of Pelican. If it did not, then our inquiry need proceed no further, for the open account indebtedness, and with it the continuing personal guaranty to make good that amount due, would survive. If, however, the notes novated the former open account indebtedness–if, that is, the debt on the open account no longer exists *per se* –then we must consider whether the guaranty survived the substitution of the new debt for the old one and, if so, whether it binds DiMaggio and Costa to make good Pelican's notes just as they had originally bound themselves to make good Pelican's debt on the open account.

The matter is somewhat complicated by the nature of the law applicable to these questions. Obviously this tribunal, a federal district court sitting in New Orleans, would generally apply the law of Louisiana to this dispute between parties residing or doing business in this state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). With respect to the questions whether the notes novated the open account and the consequent effect upon the suretyship agreement, we shall do so. With respect to the nature of the agreement itself and its provisions, however, the situation is otherwise.

The contract by which the continuing guaranty was made stipulates that any disputes arising under it "shall be construed and interpreted under, and the rights and obligations of the parties [t]hereto shall be governed by, the law of the Commonwealth of Pennsylvania." Such an election of law is permissible under the Louisiana law to which this Court must look under the *Erie* Doctrine. Article 11, Louisiana Civil Code; *Fine v. Property Damage Appraisers, Inc.*, 393 F.Supp. 1304 (E.D.La.1975). *See* 6A Corbin on Contracts § 1446 (1962); § 187, Restatement (Second) Conflict of Laws; Ehrenzweig, Conflict of Laws § 176 (1962).

We turn, then, to consider the question whether the substitution of interest–bearing notes for the open account debt constituted a novation.

*Did Novation Occur?*

■ Novation is never presumed. There must be intent of the parties that the result of their transaction be novation in order for novation to occur. La. Civil Code Art. 2190; *Eldred v. Wicker*, 273 So.2d 902, 903 (La.App.1st Cir. 1973); *Placid Oil Co. v. Taylor*, 325 So.2d 313 (La.App.3d Cir.), *writ denied*, 329 So.2d 455 (La.1976). It is also true that a mere change in the form of debt (e. g. open account to promissory notes) ought not to be construed as a novation absent such intent of the parties. La. Civil Code Art. 2190; *W. W. Carre Co. v. E. J. Stewart & Co.*, 166 La. 317, 117 So. 238 (1928); *Eldred, supra; Insured Lloyds Insurance Co. v. Woodle*, 248 So.2d 862, 864 (La.App.2d Cir. 1971); *T. B. Jordan & Co. v. Anderson*, 29 La.Ann. 749 (La.1877).

■ In this case, however, despite Publicker's arguments, it appears to a certainty that the necessary intent to constitute a novation was present. In response to Costa's interrogatory asking "For what Purpose did Ms. Murray [Publicker credit manager] request that the itemized Notes be signed and issued by Pelican to Publicker?" Publicker stated that "An agreement was reached to convert the receivable balance into a series of notes at 12% per annum annual [sic] interest." Further, Publicker

responded "Yes" to Pelican's question "Was it the intention of Publicker to convert the then open account into a form of indebtedness bearing interest?" Thus, something more than mere form of debt was changed here; there was in fact a novation.

*Does the Continuing Guaranty Bind Defendants To Pay the Notes Which Novated the Open Account?*

Having decided that the issuance of the notes did novate the open account debt, there are two questions yet to consider. The first is whether this novation had the effect of novating, along with the open account, the guaranty Costa and DiMaggio made in their private capacities to stand good for the amount Pelican owed Publicker on the open account. Were the answer to this query in the affirmative, there would obviously be no surviving personal obligations and it would be unnecessary to pose the final question: if the guaranty was not itself novated along with the open account, then is the guaranty effective to bind Costa and DiMaggio to pay Pelican's notes just as it bound them to make good the open account debt?

Again, we preliminarily face the issue of whether Louisiana or Pennsylvania law is the more appropriate to apply to these questions. Because the novation occurred outside the guaranty agreement—which both by logic and by its terms stands apart from the issue of whether a novation occurred and, if so, what the ramifications of such novation were—the Court finds that Louisiana law must determine whether the agreement survived the novation. If it did so, however, then the current duties and rights of the parties with respect to that agreement must be determined looking to Pennsylvania law, as agreed by the parties when they entered into the contract.

Publicker argues that even if a novation was effected the defendants are still bound by their suretyship agreement because that agreement survives the novation. They point to language in the agreement:

Surety does hereby covenant and agree to, and does hereby, guarantee and become surety for, to Creditors, and to each of the latter, the prompt payment of any and all debts of any kind or character now owing or which may at any time or times hereafter become due or payable to Creditors, to any of the latter, by Principal, and the prompt and faithful performance by Principal of any and all duties and obligations of any kind or character on the part of Principal to be performed at any time or times under any agreements or arrangements now or at any time or times hereafter existing between Principal and one or more of Creditors.

Article 2198 of the Louisiana Civil Code provides in pertinent part that "The novation that takes place with regard to the principal debtor, discharges the sureties." In other words, a novation must broadly be taken to cancel not only the underlying contract for which a new one is substituted but, in situations in which the underlying contract is in the nature of a debt, as cancelling guaranties issued to pay that underlying debt as well.

Movants rely heavily on the application of Article 2198 in *Reed–Joseph Co. v. Farm Storage & Equipment Co., Inc.,* 373 F.Supp. 444 (W.D.La.), aff'd. *per curiam* 502 F.2d 1165 (5th Cir. 1974). In a similar fact situation, the Court there held that a novation effected by a corporation's issuing a note payable in the amount of its total open account indebtedness released that corporation's two shareholders from a previous suretyship contract in which they had agreed to indemnify the creditor against any and all "liability, cost, damage, attorney's fees and expenses of whatever kind or nature" which it might sustain in the event of the defendant corporation's insolvency. *Id.* at 445. It is not clear from the *Reed–Joseph* opinion whether the debtor corporation was in fact insolvent at the time of the litigation; the Court did return judgment against the corporation, albeit not against the two individual guarantors, for the full amount of the note, plus interest. In an unpublished summary affirmance, the Court of Appeals, upon its "review of the evidence in the record," found no merit in

the creditor–appellant's assertion that the individual guarantors "should be bound under the terms of the 'indemnity agreement.'" Because of the unclearness of the facts in the case and because of both the District Court's and the Circuit Court's relative lack of elucidation of their opinions on the issue, this Court does not find *Reed–Joseph* to control this case.

■ The Fifth Circuit has, however, ruled explicitly that the "giving . . . of notes as evidence of an indebtedness covered by a continuing guaranty does not work a novation so as to discharge the guarantor." *Leeds v. Whitney National Bank of New Orleans*, 374 F.2d 500, 502 (5th Cir. 1967). We believe this to be the only just rule to apply here. Louisiana courts have for many years agreed, recognizing that the provision of Article 2198, as is made clear by its distinguishing the "principal debtor" from the "sureties," pertains fundamentally to situations in which the principal and sureties are different persons. *See, e. g., Morgan et al. v. Their Creditors*, 1 La. 527 (1830); *Gustine v. Union Bank*, 10 Rob. 412 (La.1845).

In the instant case, the principal and the sureties on the open account debt were identical except that the principal was Pelican, a corporation controlled by DiMaggio and Costa, while the sureties were DiMaggio and Costa in their personal capacities. Courts have not hesitated to pierce the corporate veil when necessary to do substantial justice in a variety of situations. *See, e. g., Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Weisser v. Mursam Shoe Corp.*, 127 F.2d 344 (2d Cir. 1942); *Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966); *Lushute v. Diesi*, 342 So.2d 1132, 1135 (La.App.3d Cir. 1977), *rev'd. in part on other grounds*, 354 So.2d 179 (La.1978); *McCulley v. Dublin Construction Co.*, 234 So.2d 257 (La.App.4th Cir.), writs refused, *id.* 256 La. 375, 236 So.2d 503 (1970); *Sutton v. Moreland*, 177 So. 396, 398 (La.App.2d Cir. 1937); Note, Liability of a Corporation for Acts of a Subsidiary or Affiliate, 71 Harv.L.Rev. 1122 (1958). Here, DiMaggio and Costa were operating as a corporate entity, Pelican State Distributors. As such, they could not, absent extraordinary circumstances, be held personally liable for its debts. In order to obtain credit, however, they personally guaranteed the corporation's debts "of any kind or character." Under these circumstances, DiMaggio and Costa can hardly be heard to claim that their identity is not inextricably bound up with that of Pelican. Article 2198 does not, and equitably could not, apply here. Even if notes do effect a novation, the issuing of them does not release sureties who are identical to the principal. The debt of a surety is not discharged through novation when that surety accedes to that novation. *See Morgan, supra*, 1 La. at 527–528 (surety discharged *if* his name is *not* on renewing note); *Gustine, supra*, 10 Rob. at 417 (no reservation of right against surety *if* surety *not* party to novation).

■ It is uncontradicted, however, that the notes were issued by DiMaggio after Costa's complete withdrawal from the Pelican business. Thus, Costa, unlike DiMaggio, cannot be considered, either personally or through a no longer existent relationship with Pelican, to have been a party to the issuing of the notes which replaced the open account debt which he had guaranteed. Article 2198, by virtue of its provision that a surety is released through a novation to which he does not accede, therefore mandates the conclusion that Costa was discharged as surety when DiMaggio issued the notes.

Further, the first paragraph of Article 2198 of the Code provides that "[b]y the novation made between the creditor and one of the debtors *in solido*, the codebtors are discharged." Two persons bound for another's obligation, as here, are *ipso facto* bound *in solido* between themselves. *See Slovenko*, Suretyship, 39 Tul.L.Rev. 427, 431 (1965). We have already found, for the reasons discussed, that the renegotiation of the debt constituted a novation. Because the novation was made for Pelican by DiMaggio alone, without the participation or assent of Costa, the novation extinguished

Costa's obligation as a potential debtor *in solido* with DiMaggio on the suretyship contract. *See Lee v. Sewall*, 2 La.Ann. 940 (La.1847) (previous guarantor not obligated to pay note for company's debts purportedly issued for the company by a partner in the company after the company's dissolution). DiMaggio, however, because he issued the notes for the corporation in his capacity as the corporation's then sole shareholder and because he was a debtor *in solido* party to the novation, is not released from his earlier suretyship agreement under this provision of Article 2198.

▮ Counsel for Costa argues additionally that the continuing guaranty lost efficacy due to failure of consideration at the time of the issuing of the notes. While our decision that Costa was released from the suretyship agreement under the provision of Article 2198 of the Code precludes reaching this issue with respect to Costa, the argument could be as well raised by DiMaggio, and we will consider it from that viewpoint.

It is asserted that the consideration for the suretyship agreement was the extension of credit on open account to Pelican, that credit was cancelled at the time of the drawing of the notes (in that the notes took the place of the entire accumulated open account debt, and that, because all further payments were thereupon required to be by certified check, the extension of credit ceased), and that the suretyship agreement thus died with the issuing of the notes. It is true that Louisiana civil law has followed the common law rule of requiring consideration for a suretyship agreement rather than subscribing to the French doctrine that suretyship is a gratuitous unilateral promise. *See Slovenko, supra*, 444–445; *contrast* 2 Planiol, Traité Elementaire de Droit Civil no 2324 (11th ed. 1939). Counsel's argument as to consideration is flawed, however, by its failure to note that the consideration for the suretyship agreement, as set forth in that agreement, is "the extension of credit from time to time … at such times, in such amounts, in such way and manner, and for such periods of time,

as Creditors may solely in their, or in each of their, direction elect.". Consideration thus existed with the earlier extension of credit and, once having existed, continued to exist. There was no requirement of consideration of a *continuing* extension of credit on open account. The argument that DiMaggio is released from the suretyship agreement by the failure of consideration thus fails.

Having determined that Costa was released from the suretyship agreement by virtue of Article 2198 of the Louisiana Civil Code, we must now consider whether the agreement itself is sufficient under Pennsylvania law to bind DiMaggio as surety under current circumstances. We find that it is.

▮ Pennsylvania law recognizes that an agreement of guarantyship may extend as long as is contemplated by the parties, conceivably even to a point beyond the guarantor's death. *In re Lorch's Estate*, 284 Pa. 500, 131 A. 380 (1925). *See Henwood v. Home Indemnity Co.*, 138 Pa.Super. 430, 10 A.2d 848 (1940). The Pennsylvania Supreme Court has noted that "Whether a contract of guaranty is a continuing undertaking is a question of intention which must be gathered from the instrument itself, or from the course of dealings between the parties, or from both." *National Bank of Chester County v. Thomas*, 220 Pa. 360, 69 A. 813 (1908). In this case, it is entirely clear from the above–quoted contractual language that the instrument itself was intended by the parties to be a continuing guaranty. It is still further clear that the rational intent of Publicker could hardly have been to discharge a personal promise to pay a substantial corporate debt which it had and which at its pleasure could have continued to have had by refusing to novate the open account arrangement in favor of notes. Thus, Pennsylvania law mandates the continuing liability of DiMaggio.

For the foregoing reasons, Costa's motion for summary judgment is GRANTED and DiMaggio's motion for summary judgment is DENIED.