### HENRIETTE COUGOT *v.* ALEXIS FOURNIER.

Where one who has acted as curator of a succession, and failed to pay over funds which came into his hands as such, makes a voluntary surrender of his property to his creditors, under the act of 20th February, 1817, the surety on his bond as curator may oppose his surrender. C. C. 3026. The failure or neglect of a creditor to oppose the surrender, cannot operate a release of the surety. *Per curiam* : The effect of the surrender was only to discharge the debtor from imprisonment ; it did not release him from the payment of his debts.

APPEAL from the Court of Probates of New Orleans, *Bermudez*, J.

*Canon*, for the plaintiff.

*Barthe*, for the appellant.

SIMON, J. This appeal is taken from a judgment condemning the defendant to pay the sum of $1500, which is the amount of another judgment previously obtained by the plaintiff against Jean Dufour, in his capacity of curator to the estate of Mare Fouché

Cougot. The defendant's liability to pay the sum, is based upon his having subscribed the bond furnished by the curator, as surety for his good and faithful administration of the estate.

The record discloses the following facts : The deceased was the plaintiff's husband. The amount by her claimed is established by her marriage contract to be the value of a slave, by her brought into the marriage, and which, by the terms of the contract, became the husband's property. Her claim is therefore dotal ; and, as such, is secured by a tacit mortgage and general privilege on all the property of the estate. This was recognized by the judgment alluded to in the plaintiff's petition, ordering the curator to place her claim accordingly, on the tableau of distribution of the funds of the succession.

The inventory of the estate shows an active mass of $3759 27, including therein, the estimated value of a slave, who was in jail at the time the inventory was made ; and no evidence has been adduced to show, what became of said slave after the curator took possession of the estate. The only account exhibited by the defendant, as having been rendered by the curator, is one in which he accounts for three sums of money by him received, amounting together to $1349 93, leaving a balance in his hands of $1348 43. This account was homologated by the Court of Probates, *so far as not opposed.* The record contains, also, an opposition to the homologation of the curator's account, by divers creditors of the estate ; and, among others, by the plaintiff, upon which the judgment relied on, and referred to in her petition was rendered ; but the account itself, if different from the one already noticed, does not appear to have been produced, and nothing shows that any other account was ever rendered, or amended, in conformity with said judgment.

It further appears, from the written admissions of the parties, that the curator having made a cession of his property to his creditors, the following item figures in his schedule, among his passive debts : " *Succession Mare Fouché Cougot, mon compte avéc elle,* $1348 43 ; " and that the plaintiff did no toppose the insolvent Dufour's obtaining the benefit of the insolvent laws.

Under this state of facts and circumstances, the plaintiff's claim is resisted on two grounds. 1st. That the plaintiff ought to have

opposed the surrender made by the curator to his creditors, as the claim she had then against him, and for which she had obtained a judgment, was for a sum of money deposited in the curator's hands in a fiduciary character, and as curator of the estate ; that such an opposition would have deprived Dufour of the benefit of the insolvent laws, and prevented his discharge ; and that the plaintiff's failing to make the opposition, ought to have the effect of discharging the defendant from all responsibility as surety of the curator.

2d. That supposing the defendant to be liable, the plaintiff's claim must be reduced to the sum of $723 68, being the balance in the hands of the curator after paying the privileges superior in rank to the plaintiff's.

I. We have been referred to the insolvent laws of the State, (act of 1817, sect. 25,) for the purpose of showing that Dufour was not entitled to the relief therein provided for ; and it has been strenuously contended, that it was the plaintiff's duty, in order to protect the defendant's rights as surety, and to enable him to exercise effectually his legal right of subrogation, to oppose the curator's surrender, on the charge of fraud resulting from his being an unfaithful depositary. We shall abstain from expressing any opinion on the question, whether Dufour was, or was not, under the facts and circumstances of his case, and within the meaning of the insolvent laws, an unfaithful depositary, and whether or not he was entitled to the relief by him sought for in making a surrender of his property to his creditors. This is entirely useless to the final determination of this cause, as, even supposing that his surrender could have been successfully opposed, it does not, in our opinion, lie in the mouth of the defendant, his surety, to complain of the omission of an act which he was himself at liberty to perform, if he though it necessary for the protection of his rights. Under art. 3026 of the Civil Code, a surety may, even before making any payment, bring a suit against the debtor (*peut agir contre le debiteur*) to be indemnified by him, *when the latter has become a bankrupt*, or is in a state of insolvency. Pothier, Obligations, No. 442, 443. Thus, the surety was clearly competent to make the opposition, and to avail himself of all the objections which could have been made by the creditor ; and we agree

with the judge, *a quo*, in the opinion that the inaction of a creditor, who fails or neglects to make opposition to the surrender of property made by his debtor, so as to deprive him of the benefit of the insolvent laws, cannot operate the release of the surety. It is obvious, that the effect of the surrender did not go further than to discharge the debtor from imprisonment ; that he was not liberated from the payment of his debts; that no real right was abandoned to the prejudice of the surety on the debtor's property ; and that, if the defendant has neglected to avail himself of his legal rights against his principal, the plaintiff cannot be made to suffer therefor.

II. The second ground is equally untenable. It does not appear that the curator has ever accounted for the whole amount of the inventory. Nay, the sums accounted for by him are included in, and form a part of the inventory, besides the value of the slave for which no account has been rendered. It was the duty of the curator to file a tableau of the general situation of the estate, and to class the creditors thereof according to their rank. Nothing shows, in this case, that the estate was insolvent ; and were we to take for granted the allegation of the defendant that there are other privileged debts of the succession, amounting to the difference between the sum accounted for by the curator, and the sum of $723 68, to which, he contends, the plaintiff's claim must be reduced, which fact is not established by any proof, there would still be more than sufficient to satisfy both the plaintiff's and the other privileged creditors' claims. The inventory amounts to $3759 27, and the aggregate of the privileged debts would not reach $2200. The defendant is clearly liable, as surety, for the whole amount of the estate, which, from the inventory, appears to be solvent and fully sufficient to pay its debts ; and, as we said in the case of *Bonny & Baker* v. *Brashear*, 19 La. 386, no injury can result to the other creditors by decreeing the defendant to pay, to the extent of his liability, the claims of the creditors who may sue him on his bond. The fact of the succession's being solvent, satisfies us that the defendant, by paying the plaintiff's entire claim and the other privileged debts, will not be compelled to pay more than he really owes under his obligation. Again, the plaintiff having exercised her individual right of suing him on the

bond, we cannot withhold from her the indemnity which it was intended to secure, in case the curator failed to comply with its conditions. See also 11 La. 330. 16 La. 73.

*Judgment affirmed.*