SOUTHERN SECURITIES CO v. IRWIN LANDAU, ET AL.

(May 6, 1928. Opinion and Decree.)
(June 4, 1928. Rehearing Refused.)

(*Syllabus by the Court*)

1. Louisiana Digest—Bills and Notes—Par. 127, 138, 139.

The obligation assumed by the purchaser and mortgagor to insure the property mortgaged in favor of the vendor or of the holder of the notes does not make it the duty of the holder of the notes to insure as a security for the maker of the notes and the endorsers thereon unless specially and clearly made his duty.

2. Louisiana Digest—Bills and Notes—Par. 194; Mortgages—Par. 141.

But if the holder of the notes does insure and a loss occurs which the insurance company refuses to pay, the holder is not bound to sue the insurance company before having recourse against the maker and endorsers.

Appeal from Civil District Court. Hon. Porter Parker, Judge.

Action by Southern Securities Co. against Irwin Landau et al.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

John C. Hollingsworth, of New Orleans, attorney for plaintiff, appellant.

Legier, McEnerny & Waguespack, of New Orleans, attorneys for defendant, appellee.

CLAIBORNE, J. This is a suit on four promissory notes.

The plaintiff alleged that by act of F. A. Miller, notary, dated July 14, 1923, the Southern Motor Car Company sold to Irwin Landau an automobile for the price of $1647.78, of which $495 was paid cash, and for the balance the said purchaser, Irwin Landau, made twelve promissory notes of $50 each, six of which were payable on the 13th day of each of August, September, October, November and December, 1923, and January 13, 1924, and six of $142.13 were payable on the 13th day of each of February, March, April, May, June and July, 1924, each made payable to the order of and endorsed by the maker with eight per cent per annum interest from maturity until paid and paraphed "Ne Varietur" by the Notary for identification with the act of sale; that in order to secure the payment of said notes the purchaser mortgaged the above automobile in favor of any future holder of said notes; that the plaintiff is the holder and owner of four of said notes, acquired before maturity for a valuable consideration, maturing on the 13th of April, May, June and July, 1923; that Dr. George F. Roeling, F. R. Gomilla and the Southern Motor Car Company are endorsers of said notes. Plaintiff prayed for judgment against the maker and endorser of said notes in solido for $568.52, with interest and attorney's fees; and vendor's privilege upon the automobile.

All four defendants answered. They admitted that plaintiff was the owner of the notes sued on and that it had acquired them before maturity; but they averred that the consideration of said notes had

failed; that the plaintiff was engaged in the business of financing the purchase of automobiles and discounting automobile paper; that at the time said Irwin Landau bought the automobile above mentioned from the Southern Motor Car Co., the plaintiff discounted the notes sued upon; that in the calculation of the amount and the consideration paid for the said notes by plaintiff there was included a charge for fire and theft insurance which was to be taken out by the plaintiff herein, and in the event of loss occasioned by fire or theft, the plaintiff agreed that in case of damage or loss by fire or theft, the sum recovered from the insurance company was to be first applied against the purchaser's obligation and the balance forwarded to him at once; that in the pamphlet circulated by plaintiff covering the method of financing automobiles, the clause quoted covering insurance against fire and theft, is specifically included, and the further statement is made that the "rates include the cost of fire and theft insurance for 75 per cent of the cash selling price for the period of one year"; that the amount of insurance taken out by plaintiff was $1196, and "that this insurance was in full force and effect on the day that this automobile financed by the plaintiff was destroyed by fire"; that on March 8, 1924, the automobile herein was destroyed by fire, and that notice of such destruction was given to plaintiff and demand made for reimbursement by plaintiff to defendants of the amounts paid by them; defendants further averred that having paid to plaintiff the notes maturing prior to those sued on, it was the duty and obligation of plaintiff to effect a proper insurance and to collect the insurance and to apply it to the amount due to plaintiff on the unpaid notes and to the amount of the notes already paid by defendants; that it was not in their power to collect said insurance as all the papers relating thereto were in the possession of the plaintiff; "that it was the duty of the plaintiff herein, under its agreement as shown above, to have effected such insurance and to have collected the insurance so effected upon having been informed of the loss by fire of this particular automobile."

Assuming the character of plaintiff in reconvention the defendants alleged that the series of notes furnished by Landau and "endorsed by your other respondents" amounted to $1152.78; that Landau paid the first note of $50 and the other defendants, Gomilla and Roeling, paid the others to the amount of $534.26; that by reason of the failure on the part of plaintiff to effect the proper insurance for which payment was made by defendants, and which was a part of the consideration for which the notes were given, the four notes herein sued on have become extinguished and defendants are entitled to recover from the plaintiff the amount paid by them, say $584.26.

The defendants prayed for judgment annulling the four notes sued on, and for judgment in their favor for $584.26.

There was judgment in favor of the defendants rejecting plaintiff's demand, and in favor of the defendants except Landau, on their reconventional demand against the plaintiff for $534.26.

The plaintiff has appealed.

The defense to this suit is based upon the following proposition contained in the last paragraph of defendants' answer, viz: "that it was the duty of the plaintiff herein under its agreement as shown above to have effected such insurance and to have collected the insurance so effected upon having been informed of the loss by fire of this particular automobile" and to

have distributed the proceeds in the manner set forth in the answer.

The plaintiff was not a party to the act of sale and mortgage, therefore, all references to insurance in that document do not bind it. All obligations, however, concerning the duty of insurance of every kind were imposed upon the purchaser and mortgagor, Landau, and not upon the holder of the notes, plaintiff herein, who was not a party to said act of sale. This remark applies to the following words contained in the act of sale:

"This sale is made for and in consideration of the following terms and conditions:

List price _____ $1495.00
Southern charge, cash price _____   152.78
This charge includes fire, theft and
  transportation insurance for 1 year

                                       $1647.78

The automobile was sold to Landau by the Southern Motor Car Company, a partnership composed of Drs. Roeling and Gomilla, two of the defendants herein, and the notes furnished by Landau were endorsed by them and purchased from them by the plaintiff.

The obligation to insure contained in the act of sale and mortgage was the usual stipulation by the purchaser and mortgagor as contained in all acts of mortgage as follows:

"The said 'mortgagor' hereby agrees and binds himself to keep the said property above described constantly insured against risk of loss by fire and theft, with acceptable insurance companies, to an amount not less than the sum of the notes herein described until the full and final payment of said promissory notes and the satisfaction of all obligations herein undertaken, the policies of insurance to contain a clause that in the event of loss, if any, payment shall be made to the mortgagee or to its endorsers, as its or their interest may appear, and to transfer and deliver unto the said mortgagee the policy or policies of such insurance, the mortgagor consenting and agreeing that the said mortgagee shall have the right to transfer said policy or policies to any future holder or holders of said notes and that in case of failure of said 'mortgagor' to effect such insurance within five days of the date hereof, all of the notes remaining unpaid shall at once become due and exigible. The mortgagee, however, reserves the right at its own option, in case of the failure of said 'mortgagor' to effect such insurance, to itself have the policy herein mortgaged insured and the reimbursement of all sums paid for that purpose to an extent not exceeding the sum loaned and at a premium rate of not more than five dollars per hundred shall be secured by the privilege and mortgage aforesaid."

But the defendants contend that the consideration of their endorsement was the obligation to insure assumed by the plaintiff in accordance with a circular issued by it. The following is the clause upon which the defendants rely:

"The rates include the cost of fire and theft insurance for 75 per cent of the cash selling price for the period of one year. In case of damage or loss by fire or theft, the sum recovered from the insurance company is first applied against the purchaser's obligation and the balance forwarded to him at once."

But as a matter of fact although not bound to do so the plaintiff did insure the automobile as alleged by defendants in the name of the owner, "Irwin Landau, loss if any payable to Southern Securities Company as their interest may appear," and after the automobile was destroyed by fire, in March, 1924, the plaintiff did exert itself to collect the loss, demanded payment from the insurance company which refused to pay on the ground that Landau had ceased to be the owner of the automobile and had transferred it to the Southern Motor Car Company, the defendants in this case. In support of his defense there is in the record an affidavit of

Henry Weiser, who declared that he is the duly authorized representative of the Southern Motor Car Co., that his company sold to Landau a motor car for $1495; that he receives the said motor in full acquittance and discharge of all debts and obligations arising out of the purchase of said car and particularly the outstanding notes, eleven in number, amounting to the sum of $1102.78, and that in the event said car is sold by either party to this affidavit in excess of $1152 that the surplus shall be given to said Landau who returned the said car. This affidavit is signed by Landau and by Southern Motor Car Co., by H. Weiser.

The authority of Weiser to sign that document was denied by Dr. Roeling.

Weiser was only the general manager of the sales department and was their salesman.

He got possession of the car, and, to the knowledge of defendants, was attempting to sell it for account of the parties in interest and was to "credit Landau's account" with the proceeds of sale. Dr. Roeling knew that if the car sold for less than what Landau owed on the notes that he and Dr. Gomilla would be liable for the difference; no one of the defendants ever attempted to bring suit against the Union Insurance Company.

David J. Maddox, member of the partnership of plaintiff company, testified that they had made efforts to collect the insurance, but that they had collected none, and failing to collect, filed this suit.

Harry J. Boyle was the adjuster for the Union Insurance Company, he investigated the claim of Irwin Landau concerning his car destroyed by fire; Landau told him that he turned the car over to Weiser in consideration of a full discharge of all indebtedness due on the car; he did not own the car; after the statement made by Landau, the Union Insurance Society denied liability according to the following letter dated April 8, 1924:

"Mr. Irwin Landau and (or) Southern Securities Company.

"Gentlemen:

"This office has been instructed by the Company to deny any and all liability under the above policy because of material violations of the policy contract. Reserving all rights of the company under the policy contract, we are,

Yours very truly,

"Mr. Bryde, Bourne and Kennedy."

The insurance company had paid nothing to anybody on account of this loss; witness discussed the matter with Maddox and advised him that they were going to deny liability of his claim; Maddox tried to collect the insurance, but witness would not pay him anything; if at the time of the fire Landau was not the sole unconditional owner of the car it would avoid the policy. Landau said he was not, hence the denial of liability of the insurance company; the company is not liable even to the mortgagee with the loss payable clause; the mortgagee has to prove his loss; if the loss is secured then the insurance company does not pay until the mortgagee has exhausted his recourse against the endorsers; the insurance company under the mortgage clause is nothing but a purchaser of notes they might buy from Maddox; they don't admit any liability; the Southern Securities Company made a claim on the insurance company which told them there was no liability.

Dr. Maddox testified that no one of the defendants ever called on him to deliver to them the insurance policy so that they might sue upon it; the insurance company told him that they were not liable on this claim.

Counsel for the defendants introduced in evidence two letters of the plaintiff to the Southern Motor Car Co. for the purpose of showing that the plaintiffs "actually made demands and sought to collect the insurance from the insurance company."

The policy contained the following clause:

"This insurance, as to the interest of the mortgagee only therein shall not be invalidated by any change in the title or ownership of the property, provided that the mortgagee shall notify this Company of any change of ownership * * * which shall come to the knowledge of said mortgagee * * * otherwise this policy shall be null and void."

But if the notes included a charge for fire insurance the defendants could not have acquired a right to an insurance from the plaintiff until they had paid the notes.

Even if the plaintiffs were obligated to insure the car, we have seen that they had complied with that obligation. After the loss they made reasonable amicable demands from the insurance company for payment.

The company denied liability and refused to pay. Plaintiffs could not be required to do more. They could not be required, as a condition precedent, to sue these defendants, and to involve themselves in a long and expensive litigation to determine the liability of the insurance company. The defendants were the sureties of Landau by their endorsement of his note. Union Nat'l Bank of N. O. vs. Grant, 48 La. Ann. 21, 18 So. 705.

It has been decided that the surety cannot require the creditor before resorting to him to sue the principal debtor; his remedy is to pay the debt and exercise the creditor's rights against the debtor to which he is subrogated or to proceed under C. C. 3057 (3026), C. C. 3061 (3030),

2 H. D. 1536; No. 4 S. 2; No. 1, 3 La. Ann. 674; Elmore vs. Robinson et al., 18 La. Ann. 651; Hill & Co. vs. Vourcier et al., 29 La. Ann. 844.

The surety is not discharged by the lessor's mere omission to enforce or preserve his privilege; it is enough if he do not act to impair it, or to prevent him at any moment from subrogating the surety to his rights, 2 H. D. 1540, No. 5; Pharr vs. McHugh, et al., 32 La. Ann. 1280.

Where the surety of a defaulting and absconding bank clerk required the bank to take legal steps against him the court denied that defense and stated, 3 La. Ann. 680:

"Under the Roman Law it seems that the refusal of the creditor to sue upon the request of the surety would not operate the surety's discharge * * * it was .his (the surety's) duty if he desired to avail himself of them, to pay and take the weapons of the law into his own hands." Quoting Boutte vs. Martin, et al., 16 La. 136, and State vs. N. O. & Carrollton R. R. Co., 4 Rob. 420; also Parker vs. Alexander, et al., 2 La. Ann. 188.

In Boutte vs. Martin, 16 La. 133, the Court said:

"The defense of the appellant was that the plaintiff had neglected to sue the principal on the note, although earnestly urged to do so; and that he had indulged him with a prolongation of the day of payment. The first plea was correctly disregarded. It is an idle one. The creditor generally requires security to avoid suing the debtor, and the surety cannot require, before the creditor resorts to him for payment, that he should sue the principal. If he wished the principal to be sued, he must pay the debt, and then exercise the rights of the creditor to which payment subrogates him, or proceed according to the Article 3026 of the Louisiana Code, to be indemnified by the principal debtor."

It is therefore ordered that the judgment herein rejecting plaintiffs' demand and dismissing its suit be reversed and set

aside; and it is now ordered that the defendants herein, Irwin Landau, the Southern Motor Car Company, Dr. George F. Roeling, and Dr. Frank R. Gomilla, be condemned, in solido, to pay to the plaintiff herein, the Southern Securities Company, the sum of Five hundred sixty-eight and 52-100 dollars with eight per cent per annum interest from April 13, 1924, until paid and fifteen per cent attorney's fees upon said sum in principal and interest, and all costs of suit, with vendor's privilege upon the automobile mentioned in the petition herein.

It is further ordered that the judgment in favor of said Dr. George F. Roeling and Frank R. Gomilla, plaintiffs in reconvention, be reversed and set aside, and their demands rejected at their costs.

It is further ordered that the reconventional demand of Irwin Landau be rejected and dismissed at his cost.