HAWTHORNE,. Justice.
 

 Plaintiff W. C. Sheeks instituted this suit to recover an in solido judgment against McCain-Richards, Inc., a corporation, and its president, Wilmot McCain, in the sum of $98,582.53 as damages for an alleged breach of contract. After trial in the lower court there was judgment for plaintiff in the sum of $7,760.33, and defendants have appealed. Plaintiff has answered the appeal seeking an increase of the amount awarded.
 

 
 *583
 
 On July 31, 1947, plaintiff Sheeks and defendant corporation McCain-Richards, Inc., by authentic act entered into a contract in which plaintiff agreed to buy and defendant agreed to sell a tract of land situated in Richland Parish, which was determined by a subsequent survey to contain 155.16 acres. The purchase price in the contract was fixed at $75 an acre, and the act recited that $180 was paid in cash, receipt of which was acknowledged by the defendant McCain-Richards. The balance of the purchase price was to be paid as follows: $14 per acre (which would amount to $2,172.24 not including interest) was to be paid on November 1, 1948, and $15 per acre for each of the years 1949, 1950, 1951, and 1952 was to be paid on November 1 of each year (which would amount each year to $2,327.45 plus interest as fixed in the contract).
 

 Under the provisions of this contract a deed to the land, with vendor’s lien and mortgage retained, was to be executed when plaintiff Sheeks had paid one-half of the purchase price. The contract also contained a provision that Sheeks was to cultivate all of the cultivatable lands in the tract beginning January 1, 1948, and then stipulated that Sheeks “ * * * hereby assigns and pledges, one-half of all of the future crops to be raised on said property, to secure the payments of the amounts provided for in this contract as will be due and payable the 1st party [McCain-Richards] * * * The contract also provided that the proposed purchaser was to pay all taxes and insurance to become due on the property from January 1, 1948.
 

 About the time this contract was signed, plaintiff informed defendant Wilmot McCain that his purpose in acquiring the property was to convert it into a rice farm, and McCain at that time agreed to assist him financially in the conversion of the property and the purchase of machinery and to advance him sums to pay the expenses of labor, materials, etc., in growing rice on the property. Upon taking possession of the property plaintiff constructed canals, ditches, and levees and installed pumps, motors, pipes, etc., in order to prepare the land for planting rice in the spring of 1948. In these operations he expended what money he had available. Since his own funds were inadequate, he called up
 
 on
 
 McCain for financial assistance, which was granted. Plaintiff raised rice crops on the land in 1948 and 1949. The proceeds of the 1948 rice crop, amounting to $13,122.08, were turned over to McCain, and McCain also received from the 1949 crop the sum of $5,045.45.
 

 Plaintiff contends that at the end of the 1949 crop year McCain arbitrarily and without cause terminated the contract between them under which plaintiff had agreed to purchase the land, and refused to permit him to conduct any further farming operations on the property; that all of this constituted a breach of the contract, and that as a result of this breach he was damaged in the amount alleged herein-
 
 *585
 
 above. Plaintiff itemizes these damages ■ as follows: • ■
 

 1. Cash payment made at tlm time the contract was executed, $180;
 

 2. Own money expended in converting the land to rice operations, $6,000;
 

 3. Annual installments paid on contract and purchase of equipment, materials, etc., to the total amount of the proceeds received by defendant from the 1948 and 1949 rice crops amounting to $18,167.53;
 

 4. Value of improvements to land as a result of plaintiff’s labor in constructing canals, ditches, levees, etc., $14,235 ;
 

 5. Loss of profit which plaintiff would have realized from future rice crops had the contract not been breached, $50,000.
 

 Defendant McCain’s principal defense is that he did not breach the contract; that at the end of the 1949 crop year, or on or about November 23 of that year, the contract was terminated by mutual consent of the parties, and all other business dealings- and transactions of these parties were amicably settled, all by oral agreement. In the alternative he contends that, in the event the court should find that the contract had not been terminated and all bttsi-' ness transactions between the parties not settled, there should be judgment against the plaintiff in the sum of $10,000 alleged to be due McCain.
 

 The trial judge concluded that there had been a breach of the contract and awarded to plaintiff damages in the total sum of $7,760.32. Of this sum, $3,630.81 was the : amount which the trial judge found to be the actual amount of money invested by the plaintiff Sheeks in the property. The 'remainder of the judgment, $4,129.51, was .the amount which the trial judge awarded as compensation for breach of the contract ■ and was computed as follows: The judge 'took the total proceeds of the 1948 and ■ 1949 rice crops, amounting to $18,167.53, •' deducted from these total proceeds current expenses and credits which he found to be allowable, arrived at the sum of $8,259.02, and then (although he did not explain why) , divided this amount ($8,259.02) in half.
 

 On November 23, 1949, while plaintiff Sheeks was engaged in loading his 1949 rice crop at Rayville, Louisiana, for consignment to Kaplan Mills in Crowley, he was accosted by Wilmot McCain, one of the defendants, who, according to Sheeks, accused him of selling this rice contrary to a verbal agreement they had made to sell it together. Tempers flared, and the argument became heated, almost resulting in a fist fight. According to Sheeks, McCain demanded that the rice be turned over to him and stated that he was then and there terminating the contract between the parties in which McCain-Richards, Inc., had agreed to sell and plaintiff had agreed to buy the lands in question. McCain, on the other hand, contends that after this affair he and Sheeks retired to a lawyer’s office in Rayville for the purpose of further
 
 *587
 
 discussing their differences, and that at this office they orally came to a mutual understanding and a definite agreement that Sheeks would leave the place, and that McCain would take the proceeds of the 1949 crop and cancel the remainder of Sheek’s indebtedness; that McCain was to keep all equipment on the place covered by chattel mortgages which he held, and that Sheeks could retain his personal property which was not covered by chattel mortgages. Sheeks admitted the meeting in the attorney’s office but denied that they had reached any agreement.
 

 After the date of this meeting Sheeks never returned to the property which he had contracted to buy. He testified that McCain immediately took possession of the property, padlocked the gate, put “no Trespassing” signs on the fence, and removed a tenant whom Sheeks had permitted to stay on the property. McCain denied these acts, but the record conclusively shows that McCain did take possession of the property and leased it to another who went into possession and raised a rice crop on this land for the year 1950.
 

 The trial judge, who heard these witnesses testify, evidently was of the opinion that the acts of McCain prevented further performance of the contract on the part of Sheeks and concluded that McCain had breached the contract. See Civil Code Article 2040. On this question of fact we cannot say that there was manifest error in the judge’s finding.
 

 Plaintiff made timely objection to any oral testimony relating to the termination and amicable settlement relied upon by the defendants as their principal defense to plaintiff’s suit for breach of the written contract. The trial judge admitted this testimony subject to the objection, and his ruling in no way prejudiced or harmed the plaintiff. After considering the testimony, he concluded that there was never any complete or total meeting of the minds between these parties as to the termination of the contract or amicable settlement, finding that McCain convinced himself that the contract was ended, but that “Sheeks was fighting every inch of the way to keep matters in abeyance until he could recover some small return from this financial disaster”. Under these circumstances it would serve no useful purpose for us to discuss or pass upon his ruling on the admission of the oral testimony to prove the termination of the previous written contract, nor can we say that he erred in his finding of fact that there was no oral agreement between the parties to terminate the existing written contract.
 

 Since we have concluded that the trial judge was correct in his conclusion that the defendants had breached the contract, the next question is: What is the amount of damages which the plaintiff has proven under the allegations of his petition?
 

 We first consider those damages which plaintiff itemizes in his petition as having been paid by him on the contract to pur
 
 *589
 
 chase, Items 1 and 3, the cash payment of $180 and the annual installments alleged to have been paid with the proceeds of the 1948 and 1949 rice crops.
 

 Since defendant McCain-Richards admitted in an authentic act, the contract to purchase and sell, the receipt of the cash payment of $180, it cannot now be heard to deny that this payment was made. See Johnson v. Johnson, 191 La. 408, 185 So. 299, and Templet v. Babbitt, 198 La. 810, 5 So.2d 13. Accordingly plaintiff is entitled to recover this sum.
 

 As to plaintiff’s claim that the proceeds of the 1948 and 1949 rice crops should be imputed as payments on the contract to purchase, the facts shown by the record and the law applicable to these facts do not support this contention.
 

 At the end of the 1948 crop year, aside from any amount due under the contract to purchase, the plaintiff was indebted to the defendant in the sum of $17,688.45 for supplies furnished, equipment sold, etc., and as to this amount there is no dispute. Plaintiff divides this indebtedness into current and capital expenses, contending that of this indebtedness $8,120.54 was for current expenses, or expenses incurred in making the 1948 crop, and that, when this sum is deducted from the total proceeds of the crop which amounted to $13,122.08, there remained a sufficient balance to pay the installment due on the contract to purchase, and that he, the plaintiff, requested of the defendant that the proceeds of this crop be imputed to this payment. The defendant, however, denied that plaintiff made any such request. Since the total amount realized from the 1948 crop was not sufficient to pay the total indebtedness due defendant at that time, there was a deficit for the year 1948 in the sum of $4,566.37. In spite of this deficit defendant agreed to advance to plaintiff an additional sum up to the amount of $4,000 for the purpose of making the 1949 crop and told the plaintiff not to worry about being able to stay on the place another year. Accordingly the plaintiff Sheeks executed a promissory note in the sum of $8,566.37 to cover the balance due on the 1948 indebtedness of $4,566.37 and to secure the 1949 advances which McCain had agreed to make to him up to the amount of $4,000. This note was secured by a crop lien and chattel mortgage.
 

 By the execution of this note the old indebtedness to McCain amounting to $17,688.45 was extinguished by novation, and a new debt was substituted in its place evidenced by the note for the 1948 deficit plus an amount to be advanced for the making of the 1949 crop. See Civil Code Articles 2185, 2186, 2187, and 2189. Having extinguished the old obligation by novation, plaintiff cannot now be heard to say that he is entitled to have the proceeds of the crop imputed to the payment of the amount due under his contract to purchase. Certainly he cannot have the debt to McCain in an amount in excess of $17,000 extinguished and apply the same funds used for this
 
 *591
 
 purpose to the payment of the amount due under his contract. Consequently plaintiff did not pay anything on the contract to purchase out of the proceeds of the 1948 crop.
 

 The proceeds of the 1949 rice crop received by McCain amounted to $5,045.45. For the making of this crop the defendant McCain had advanced to plaintiff the sum of $3,149.59, $3,056.26 of which was the balance due on the notes secured by a crop lien and chattel mortgage. Sheeks admits this indebtedness. In addition to this sum McCain also paid $1,787.97 to various creditors of the plaintiff for debts which had been incurred by plaintiff in the making pf the 1949 crop, such as milling, storage, labor, etc. This indebtedness is also admitted by Sheeks. In addition to these sums, the defendant paid the balance of $1,198.43 on a note executed by plaintiff, held by the General Gas Company, and secured by a crop lien on the 1949 crop. Therefore Sheek’s total indebtedness to McCain at the end of the 1949 crop year was $6,135.99, exclusive of anything he owed on his contract to purchase. The evidence in the record is not sufficient to convince us that the plaintiff Sheeks ever requested that the proceeds of the 1949 crop be imputed to any particular debt due by him to McCain. Accordingly, under the provisions of Article 2166 of the Civil Code, the proceeds of this crop must be imputed to the debt which the debtor had at the time fhe most interest in discharging of those debts that were equally due. Of all the debts owed by Sheeks including anything due under the contract to purchase, there can be no question that those owed to the furnishers of supplies for the making of the 1949 crop, those due for labor in the harvesting of the crop, and those debts which were secured by crop liens and pledge were the ones Sheeks had the most interest in discharging, for, until the indebtedness incurred for the making of the 1949 crop was paid, there was nothing left for Sheeks to apply on his contract. These debts were current expenses incurred by Sheeks in making this crop, and, before he could realize any profits from the crop, these debts had to be paid. The amount realized from the 1949 crop was not sufficient even to pay these debts, and consequently nothing could have been paid from the proceeds of the 1949 crop on his contract to purchase.
 

 Plaintiff does not contend that he made any other payments on this contract, and accordingly he is entitled to recover under these items of damages only $180, the amount of cash paid by him according to the authentic contract.
 

 We next consider Item 4 of plaintiff’s claim for damages, the value of the improvements to the land as a result of the constructing of canals, ditches, levees, etc., for which plaintiff alleged he should receive damages in the sum of $14,235.
 

 After the execution of the contract in the instant case, the plaintiff went into possession of the property and began to ready
 
 *593
 
 it for the growing of rice for the year 1948. As the property had not been used for this purpose before, it was necessary for him to construct main canals, outside levees, and inside levees, and install machinery, culverts, pipes, and other works, all, of which was done with the approval and consent of the defendant. In making the property suitable for rice farming he constructed 11,600 feet of main canals, 14,100 feet of outside levees, and 37,100 feet of inside levees. For these works plaintiff now contends that he is entitled to the sum of $12,565, which includes his supervision, planning, and handling of the installation of machinery and construction.
 

 Since most of the work was done by the plaintiff himself, he calculated the cost of the canals and levees from what he terms a “construction standpoint” based upon the amount of dirt moved at various amounts per foot depending upon the nature of the work. In support of his method of calculation he called witnesses familiar with rice operations who had been out 'to the' property here involved and actually viewed the improvements placed on the property by the plaintiff. These witnesses computed the cost of these improvements, the canals and the levees, at a figure somewhat lower than plaintiff’s, and according to their lowest figures the work would have cost, if done by an independent contractor, the sum of $8,220.
 

 After considering all of the testimony adduced with reference to the cost of these improvements, we are of the opinion that the cost as fixed by these witnesses is somewhat inflated because their computation is based on what the work would have cost if • done by an independent contractor, who; of course, would have included-a profit to himself in his price. In addition to the cost of the levees and the canals, plaintiff is en- . titled to a reasonable amount for cost of machinery, pumps, culverts, pipes, and other works installed by him and under his supervision, and we think that an award of $8,500 representing the cost or value' to the plaintiff of all the improvements placed ■by him on the property is fair, just, and equitable.
 

 The cost of these improvements was a total loss to the plaintiff for which he is entitled to damages as a result of the deT fendants’ breach of contract, especially since the defendants took possession of the property immediately after the breach and leased it to another who utilized these improvements in making a rice crop on ’the land the following year.
 

 We next consider Item 2 of plaintiff’s claim for damages, the sum of $6,000 which he alleged in his petition he expended from his own funds in converting the land to rice operations. According to the record plaintiff actually spent of his own funds the sum of $3,630.81, which went into the cost of making the improvements on the property, and, as pointed out hereinabove, the balance of the cost of the improvements made on the property was advanced to ■ him and
 
 *595
 
 charged to his account by McCain. We do not think that plaintiff is entitled to recover the sum expended by him in making the improvements on the property, as this sum is necessarily included in, and is a part of, the cost of these improvements for which we have already allowed him the sum of $8,500.
 

 We next consider Item 5 of plaintiff’s claim for damages, the loss of profits which plaintiff alleged he would have realized from future crops had defendant not breached the contract. For this item he prayed for damages in the sum of $50,000. Plaintiff is not entitled to any damages for loss of profits that he might have realized from future crops produced on the property had the defendant not breached the contract. This claim is entirely too uncertain and speculative to form the basis of an award for damages, and consequently it is disallowed.
 

 In recapitulation, we think that plaintiff is entitled to damages as follows:
 

 Cash payment admitted to be received by McCain in authentic act, contract to sell and purchase ....................... $ 180.00
 

 Cost or value of all improvements - placed on property by plaintiff $8,500.00
 

 Total ................. $8,680.00
 

 Defendants pleaded that, in the event this court should conclude that the contract had not been terminated, then in the alternative they are entitled to compensation or set-off for the amount of the balance due on sums advanced to Sheeks in 1948 and 1949 which the proceeds of the crops for these years failed to pay. In connection with this plea they group certain milling, labor, and storage charges amounting to $1,787.97, and then aver that “* * * there should be judgment in favor of your respondents and against the said Sheeks, in the amount of approximately $10,000, the exact sum of which will be shown upon the trial hereof * *
 

 Plaintiff objected to any evidence to prove the amount of this claim on the ground that the allegations of defendants’ answer were too vague, uncertain, and indefinite to permit proof. The trial judge in his reasons for judgment concluded that, except as to charges for milling, labor, and storage, this objection was well founded. We think his conclusion was correct, and that evidence adduced by defendants in support of this allegation could not be considered. However, during the trial of the case the plaintiff in testimony or through his attorneys admitted that he was indebted to the defendants in certain amounts and for certain sums, and, since he has admitted the correctness of these claims, and since the defendants have specifically pleaded compensation or set-off, the indebtedness is sufficiently established to be susceptible of compensation or set-off, and defendants were not required to make any proof thereof.
 

 
 *597
 
 With reference to these debts, all admitted by Sheeks, the record discloses that, after the 1948 crop had been applied to the indebtedness to defendants, there remained a balance due by Sheeks of $4,566.37; that defendants advanced to him for the purpose of making the 1949 crop the sum of $3,056.26 and these amounts, totalling $7,622.63, represent the balance due on the $8,566.37 note executed by Sheeks. In addition to these •debts, Sheeks admitted that he was indebted to McCain in the sum of $93.33 not included in the balance due on the above note. Moreover, McCain paid milling, labor, and storage charges, etc., amounting to $1,787.97, and paid the balance of $1,198.43 due on the note executed by Sheeks and held by the General Gas Company and secured by a crop lien. These debts, admitted by Sheeks, are more particularly itemized as follows:
 

 $ 4,566.37 A. Balance due on 1948 account and carried over
 

 B. Advances made by defendants for the purpose of making 1949 crop ......................... $3,056.26
 

 93.33................ 3,149.59
 

 C. Items paid by defendants on behalf of plaintiff:
 

 Sims Seed Co., for milling 1949 crop ................ Russell Burke Insurance, premiums covering fire risk $1,073.02
 

 on crop in storage......... 43.50
 

 J. C. Morris, for storage... Tilbury, for combining 1949 100.00
 

 crop ..................... 301.20
 

 Oswalt, for running, combine for 1949 crop......... 270.25................ 1,787.97
 

 D. Balance paid on $3,000 note payable to General Gas Co.......... ........................ 1,198.43
 

 Total admitted indebtedness.....$10,702.36
 

 Less credit for proceeds of 1949 crop received by McCain-Richards amounting to.............................................. $ 5,045.45
 

 Balance due................... $ 5,656.91
 

 
 *599
 
 The defendants are therefore entitled to compensate or set off the amount of this indebtedness against the total sum awarded to plaintiff as damages, thus :
 

 Total amount awarded to plaintiff as damages ................. $8,680.00
 

 Less set-off or compensation to defendants .................. $5,656.91
 

 Total to be awarded plaintiff $3,023.09
 

 Sheeks, the plaintiff-appellee, in brief filed for the first time in this court requests that the judgment of the lower court be now amended so as to award him judgment in solido against the defendants-appellants, McC ain-Richards, Inc., and Wilmot McCain. The plaintiff-appellee did not appeal from the judgment of the lower court, tie answered the appeal, but in this answer he prayed only that the amount awarded to him as damages be increased and did not seek an amendment to the judgment so as to have these defendants cast in solido. Under these circumstances we do not think that it would be proper for us to consider his request, made for the first time in brief in this court, as it was not an issue in this appeal.
 

 For the reasons assigned the judgment appealed from is amended by decreasing the amount awarded to plaintiff W. C. Sheeks from $7,760.32 to $3,023.09, and as thus amended the judgment is affirmed; defendants-appellants are to pay all costs.