**REED-JOSEPH COMPANY**

v.

**FARM STORAGE & EQUIPMENT COMPANY, INC., et al.**

**Civ. A. No. 17574.**

United States District Court,
W. D. Louisiana,
LaFayette Division.

April 4, 1974.

Voorhies & Labbe, John W. Hutchison, Lafayette, La., for plaintiff.

Pugh, Buatt, Landry & Pugh, Lawrence G. Pugh, Jr., Crowley, La., for all defendants.

## MEMORANDUM OPINION

PUTNAM, District Judge.

On September 29, 1967, a franchise agreement for the sale of certain products of Reed-Joseph Company (REED), a Mississippi corporation, by the defendants C. Henry Cowen, Jr., Clifton M. Dupont, Wilson J. Baronet, Louisiana citizens, and Farm Storage and Equipment Company, Inc. (FARM STOR-AGE), a Louisiana corporation, was confected. Cowen, Dupont and Baronet were the owners of all of the corporate stock of Farm Storage Equipment Company, Inc. and executed this contract as buyers individually with the corporation owned by them. Mr. Baronet subsequently withdrew from the Corporation and was released by REED from any obligations. He is not a party to this litigation. The business of the Corporation was the sale and erection of storage bins and other facilities for holding rough rice and grain produced by farmers in 27 parishes of Louisiana lying west of the Mississippi River and all Louisiana parishes east of the Mississippi River. The franchise agreement was exclusive as to this territory. Mr. Dupont had worked for REED prior to this agreement, the parties knew each other, and the contract contained a provision that it could not be assigned by any of the parties thereto and was not heritable.

At the outset the business prospered; but, due to a bad crop year in this area, the volume declined in 1969 and REED requested Dupont and Cowen to execute an instrument on June 13, 1969 whereby they agreed to indemnify REED against any and all " . . . liability, loss, cost, damages, attorney's fees and expenses of whatever kind or nature which REED might sustain in the event of the insolvency of Farm Storage and Equipment Co., Inc. . . . " The validity of this guarantee is disputed by both defendants Cowen and Dupont; Mr. Dupont testified under oath that he did not execute the instrument in question. However, Mr. Cowen admitted that it bears his signature, but stated that he did not recall having signed it and did not understand at any time that he was signing as an individual guarantor of all of the debts of FARM STORAGE. At this point, under the original franchise agreement, both defendants Cowen and Dupont were liable for the accounts of the corporation as they were included as individuals in the definition of the term "BUYER" set out in the first paragraph of the original franchise agreement.

In 1970 FARM STORAGE was indebted to REED in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, which included liabilities arising from expansion of its activities by the acquisition of the stock and accounts of a similar corporation operating under a REED franchise in the rice growing areas of southeast Texas.

For a period of approximately four to six months the parties negotiated with the end in view of settling the account and putting it in final form. They were not in agreement as to the total amount due and following many telephone conversations between them, a note in the sum of One Hundred Twenty Eight Thousand Eight Hundred Twenty-two and 21/100 ($128,822.21) Dollars was executed, secured by a mortgage bearing upon real estate and an aircraft owned by FARM STORAGE. The mortgage recites that this amount represented " . . . the balance due on purchases made from mortgagee, and, in order to represent said sum in a negotiable form it has this day executed . . . " the promissory note in the above amount.

In the meantime, and without the knowledge or consent of FARM STORAGE or Mr. Cowen or Mr. Dupont, REED reorganized into two corporations, both of which were domiciled in Delaware and thereafter, on December 31, 1969, these two corporations were acquired by International Systems and Controls Corporation (ISC), a conglomerate. At the time suit was filed REED was and is a wholly owned subsidiary of the latter corporation.

REED brings this suit against FARM STORAGE, Cowen and Dupont, the latter two defendants being sued individually. Defendants contend that the franchise agreement was breached when REED transferred its assets to the two Delaware corporations and again when it transferred all of the stock of these corporations to ISC. Cowen and Dupont further contend that they are not individually liable on the mortgage note in question upon which there is a present balance due of $112,918.67, with interest thereon from March 19, 1970, plus attorney's fees, etc. Throughout the negotiations which culminated in the execution of this note REED sought to have the individual defendants agree to endorse the obligation personally, but they steadfastly refused to do so. The correspondence between their attorney and the attorney representing REED at the time clearly indicates that they did not consider themselves bound for payment of the debt as individuals and that they were unwilling to bind their personal assets for payment of the corporate debt. The mortgage was finally accepted upon these terms. Their defense is predicated on the theory that the execution of the mortgage in June of 1970 constituted a novation of the debt owed by the corporation to REED, which released Mr. Cowen and Mr. Dupont from their individual liability as buyers under the term of the initial contract and also from any indemnity that might have been owed under the purported indemnity agreement executed in 1969.

On February 11, 1970 (Ex. P–3), Mr. Cowen and Mr. Dupont wrote REED outlining a proposal for the liquidation of the account owed by them. Again on March 25, 1970, following a telephone conversation with Mr. Joseph, it was proposed by letter (Ex. P–2) that they would furnish a note with a second mortgage on the corporate property, which concluded with the following paragraph: "We sincerely hope this proposition is favorable and will be satisfactory for *payment of our account.*" (Emphasis supplied.) Even subsequent thereto, when the matter had progressed to the stage where both parties had employed attorneys, Mr. Pugh wrote to Mr. Fontenot then representing REED and informed him that the officials of FARM STORAGE were not to be considered as personally bound on the indebtedness. The mortgage was not confected until several days following this letter, but it is significant that in keeping with Mr. Pugh's statement and the

testimony of Mr. Cowen and Mr. Dupont, they did not endorse the note of FARM STORAGE personally and it was accepted as such. (Exhibit D–3)

■ Based upon the foregoing and other circumstances proved in this case, we consider that the defendants have carried their burden of establishing by a preponderance of the evidence in the case the fact that it was the intention of the parties at the time the mortgage of June 1, 1970 was taken that this be a new debt and that the old indebtedness be extinguished thereby; in short, that the parties intended a novation.

Our conclusions are as follows:

1. This Court has jurisdiction over the subject matter and the parties. See 28 U.S.C. § 1332.

2. Plaintiff has sustained the burden of proving that the balance due on the note dated June 1, 1970, executed by Farm Storage & Equipment Company, Inc., to Reed-Joseph Company is the sum of $112,918.67 plus interest at the rate of ten per cent per annum from June 30, 1970, until paid, and an attorney's fee of $5,000.00.

3. When Reed-Joseph Company accepted the note dated June 1, 1970, from Farm Storage & Equipment Company, Inc., there was a novation of the indebtedness on open account, LSA–C.C. Art. 2185 et seq.; Smith, Howard & McCoy, Inc. v. Acme General Con., Inc., 152 So. 2d 596 (La.App.1963) writs refused. Sheeks v. McCain Richards, Inc., 226 La.

578, 76 So.2d 892 (1955); Crescent Cigarette Vending Corp. v. Toca, 271 So.2d 53 (La.App. 4 Cir. 1972); Pineda v. South Louisiana Pub. Co., 261 So.2d 355 (La.App. 1 Cir. 1972). See also: 25 Tulane Law Review 114.

4. The novation which occurred in this case is clear from the terms of the act of mortgage itself as well as from the expressed intention of the parties as shown by their actions preceding the execution of the note and mortgage and the correspondence between them; Cf: LSA–C.C. Art. 2190; Antoine v. Elder Realty Company, 255 So.2d 625 (La.App. 3 Cir. 1971). See Crescent Cigarette Vending Corp. v. Toca, supra; Pineda v. South Louisiana Pub. Co., supra.

■ 5. The novation that takes place with regard to the principal debtor, discharges the sureties; LSA–C.C. Art. 2197.[1] It is abundantly clear that in this case the creditor attempted to obtain the "accession" of the co-debtors and/or sureties, Cowen and Dupont, but accepted the new obligation without it.

6. Accordingly, plaintiff is not entitled to judgment against the individual defendants, Clifton M. Dupont and C. Henry Cowen, Jr.

7. Plaintiff is entitled to judgment against the defendant, Farm Storage & Equipment Company, Inc., for the sum of $112,918.67 plus interest at the rate of ten per cent per annum from June 30, 1970, until paid, and an attorney's fee of $5,000.00.

1. "Art. 2197. When novation takes place between the creditors and one of the debtors in solido, the privileges and mortgages of the former credit can be reserved only on the property of him who contracts the new debt." This is precisely what occurred here. LSA-Art. 2198, which follows, re-affirms this principle. Our finding that REED agreed to accept the mortgage on FARM STORAGE property without the continuing liability of the individual stockholders disposes of the necessity of deciding whether such individual liability actually existed in June of 1970.

The attorney who attended the meeting between Mr. Dupont, Mr. Cowen and Mr. Reed, one of the officers of plaintiff corporation, testified at the trial that according to his best recollection no novation was intended. However, his recollection was admittedly dimmed by the passage of time, and further, it is hearsay insofar as any statements made by Mr. Reed are concerned. Mr. Reed himself did not appear at the trial and gave no testimony, nor did any other representative of plaintiff who might have attended this meeting.